**UNTIED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| D. ALLEN BLANKENSHIP,<br><br>*Plaintiff,*<br>v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY,<br><br>*Defendant.* | Civil Action No. 2:24-cv-3003<br><br>Assigned to the Honorable Judge |

**VERIFIED COMPLAINT FOR A TEMPORARY RESTRAINING ORDER, AS WELL AS A PRELIMINARY AND PERMANENT INJUNCTION TO ENJOIN THE PROSECUTION OF PLAINTIFF IN AN UNLAWFUL FORUM, AND A REQUEST FOR DECLARATORY RELIEF**

D. Allen Blankenship ("Mr. Blankenship"), by and through undersigned counsel hereby files the following Verified Complaint against Defendant, the Financial Industry Regulatory Authority ("FINRA"), requesting that the Court enter a temporary restraining order ("TRO"), and after appropriate proceedings, a preliminary and permanent injunction to enjoin the disciplinary proceedings instituted by FINRA's Department of Enforcement ("FINRA Enforcement") which is to take place in an improper forum, before an arbitrator whose selection was made in blatant violation and disregard of Mr. Blankenship's Seventh Amendment right to a trial before a jury in an Article III court. Further, the imminent disciplinary proceedings are overseen by an agency recently deemed to lack the authority to adjudicate claims consistent with those lodged against Mr. Blankenship, in its administrative courts.

Mr. Blankenship requests also that the Court enter an Order declaring that the herein-referenced disciplinary proceedings violate Mr. Blankenship's Seventh Amendment right to a trial by an impartial judge, and before a jury of his peers in an Article III court, and therefore the proceedings before FINRA's Office of Hearing Officers are void and have no legal affect.

**FACTUAL BACKGROUND**

On November 19, 2019, after Mr. Blankenship spent over two decades cultivating relationships with his clients, Defendant notified Mr. Blankenship that it had initiated an inquiry into him, based upon a Form U5 filing by Independent Financial Group, LLC ("IFG"), Mr. Blankenship's former employer. Therein, IFG characterized the reason for his termination as, *in haec verba*, "[ ] for violation of firm's policy with regard to submission of required documents for certain mutual fund transactions, failure to ensure clients were receiving [ ] benefit of mutual fund breakpoints[,] and exercising discretion without proper authorization."

For the 37 months following receipt of the above-referenced notification from Defendant, Mr. Blankenship expended hundreds of hours complying with Defendant's formal and informal requests for information and documentation. In addition, Mr. Blankenship incurred hundreds of thousands of dollars in costs for representation—during and after the 37-month period—exhausting his retirement and savings, entirely. As a result of Defendant's incessant attempts to obtain evidence from Mr. Blankenship's customers in support of Defendant's tenuous allegations, Mr. Blankenship suffered substantial harm to his professional reputation that resulted in a 65% decline in his earnings.

Between October 22, 2019 and November 19, 2019, Defendants initiated an inquiry into Mr. Blankenship's termination from IFG. See, *supra*, (Introduction referencing the notification

received by Mr. Blankenship). The relevant period associated with the inquiry, as declared by Defendants, consists of the 40 months between August 2016 and September 2019.

Nearly three years later, on November 2, 2022, Defendant issued a Wells Notice, asserting that FINRA had "made a preliminary determination" to recommend disciplinary action against Plaintiff for violations of FINRA Rules: 2010, 2111, 3260(b), and 4511, as well as NASD Rule 2510(b).

Over one year later, on December 7, 2023, Defendant filed a formal disciplinary complaint (see *supra*, FINRA Disc. Proceeding No. 2019064333401, Complaint, hereafter "Complaint") against Mr. Blankenship. In a departure from the Wells Notice, Defendant alleged violations of FINRA Rules 2010, 2111, and 4511 in its Complaint. Defendant's filing of the Complaint initiated its *in-house* proceedings against Mr. Blankenship.

In support of Plaintiff's requests, it states the following:

## PARTIES

1. Plaintiff, Mr. Blankenship, is a natural person residing at 562 General Learned Rd., King of Prussia, Pennsylvania 19406, for no less than 25 years.
2. FINRA is a Self-Regulatory Organization headquartered in 1735 K St NW, Washington, D.C. 20006.

## JURISDICTION AND VENUE

3. Personal jurisdiction is proper in this court because Mr. Blankenship resides within Pennsylvania and the wrongs alleged herein were committed in Pennsylvania by FINRA, an SRO which operates within Pennsylvania.

4. Subject matter jurisdiction is proper pursuant to 28 USC § 1331 because this case is being brought in a federal district court regarding a federal question.
5. Venue is proper pursuant to 28 USC § 1391 as the events at issued giving rise to the present claim occurred herein.

## INTRODUCTION

6. FINRA is a self-regulatory agency (SRO) which derives its authority from the Securities and Exchange Commission (SEC).
7. The SEC is a statutorily appointed government agency empowered by the Securities Exchange Act of 1934.
8. SEC commissioners are appointed by the President of the United States pursuant to the Constitution's Appointments Clause, and the SEC and its commissioners are empowered with executive authority pursuant to Article II.
9. Since the passage of the Dodd-Frank Act, the SEC has been allowed to bring enforcement actions either in-house or in Article III courts, where the right to a jury trial would apply.
10. FINRA, a non-governmental agency, exclusively brings enforcement actions in its in-house arbitration forum known as the Office of Hearing Officers ("OHO").
11. OHO arbitrates cases brought by FINRA, including cases which would traditionally be actions brought at common law.
12. FINRA does not analyze whether a case has a right to a jury trial, nor whether Congress has established or defined a public right which can be brought before an Article II administrative court.

13. Rather, FINRA requires members to submit to its authority and jurisdiction, including the use of OHO, to arbitrate any allegations by FINRA against a broker.

14. The case at issue focuses on the disciplinary action brought by FINRA against Mr. Blankenship for claims of violation of FINRA rules 2110, 2111, and 4511. These claims arise from Mr. Blankenship's termination from IFG for failure to file certain required documents, failure to ensure that clients were receiving benefits of mutual fund breakpoints, and exercising discretion without proper authorization.

15. On June 27, 2024, the United States Supreme Court issued a decision in *SEC v. Jarkesy*, No. 22-859, 2024 U.S. LEXIS 2847 (June 27,2024), which held that suits at common law are subject to the seventh amendment, and Congress, in the Exchange Act, did not establish or define a "public right" for which Article II administrative courts could adjudicate (i.e., the SEC may no longer pursue claims that are legal in nature against individuals through in-house enforcement proceedings).

16. *Jarksey* states that "If a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory." *Jarkesy*, at *6.

17. To determine whether a claim receives Seventh Amendment protection pursuant to *Jarksey*, a two-part test is applied. The test, first set forth in G*ranfinanciera v. Nordberg*, 492 U.S. 33 (1989), first asks the court to compare the statutory action to 18th-century actions brought forth in the courts of England prior to the merger of the courts of law and equity.

18. This case is ultimately a case for common law fraud disguised under regulatory language as the core allegations are that Mr. Blankenship did not properly file

documents, did not make suitable recommendations to his clients, and acted without proper authorization from his principal client.

19. Without admitting to any of the allegations brought by FINRA, Mr. Blankenship asserts that all of these allegations are assertions of common law fraud, and as such the claims are legal in nature and should properly be brought before an Article III court.

20. The allegations brought by FINRA assert that, solely to earn commissions, Mr. Blankenship misrepresented or omitted material facts to his customers, and his customers relied upon the alleged misrepresentations to their detriment.

21. The common law elements of fraud include a false representation of a material fact, knowledge of that fact's falsity, intent that the false fact should be relied upon, actual reliance upon that fact, and resulting injury caused by such reliance.

22. Pursuant to *United States SEC v. Appelbaum*, No. 22-81115-CIV-CAN, 2023 U.S. Dist. LEXIS 39201 at *10 (S.D. Fla. Jan. 24, 2023), the SEC clearly views FINRA Rule 2111 as a securities-fraud claim under Rule 10b-5 of the Securities and Exchange Act.

23. As the claims at issue appear to be fraud claims, the first part of the *Granfinanciera* test is met.

24. The second part of the test in *Granfinanciera* used in *Jarkesy* requires that the factfinder examine the remedy sought and determine whether it is legal or equitable in nature.

25. The relief sought in the present case is that the court order one or more of the sanctions provided under FINRA Rule 8310(a), including full disgorgement of any ill-gotten gains and/or complete restitution, together with interest.

26. Disgorgements are only effective against individuals who continue to operate under FINRA's jurisdiction, as FINRA has no judicial power to enforce the collection of disciplinary fines.

27. Additionally, fines and disgorgements are placed into accounts owned and administered solely by FINRA – such funds are not paid to individuals who suffer injury.

28. Furthermore, FINRA Rule 8310(a) allows a hearing officer to impose censure, fines, suspension of current membership or bar to future membership with any member, expulsion, issuance of a cease and desist, or imposition of any other fitting sanction.

29. Clearly, the listed remedies go beyond restoring the status quo and are all on the table according to the language of the OHO case against Mr. Blankenship.

30. According to *Jarkesy*, what determines whether a remedy is legal is if it is designed to punish or deter the wrongdoer, or on the other hand, solely to restore the status quo.

31. As possible remedies include those beyond merely restoring the status quo, the remedy is legal in nature.

32. As the remedy is legal in nature, the second prong of the test from *Granfinanciera* is satisfied and the case at hand should receive the Seventh Amendment right to a jury trial.

33. A decision rendered in an OHO proceeding may be appealed to FINRA's National Adjudicatory Counsel ("NAC"), within 25 day following service of the OHO decision.

34. Upon completion of its *de novo* review, the NAC issues a written appellate decision that may affirm, modify, or reverse the OHO decision being reviewed.

35. Upon receipt of an NAC appellate decision containing an imposition of a disciplinary sanction, the individual subject to the sanction has a statutory right to motion for review by the SEC.

36. The SEC performs its review of NAC appellate decisions absent an Article III court and jury.

37. According to *Jarkesy*, the SEC's review is unconstitutional.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

*(Declaratory Relief Regarding Plaintiff's Right to Jury Trial Pursuant to the Seventh Amendment)*

38. Plaintiff incorporates and reasserts all prior factual allegations as though fully set forth herein.

39. The Seventh Amendment Staes, "In suits at common law, where the value in controversy shall exceed twenty dollars, the right to trial by jury shall be preserved."

40. According to the two-pronged test as laid out in *Jarkesy* and *Granfinancieria*, this case is a suit at common law to which the public rights exception does not apply.

41. As this is a case at common law, adjudication by an Article III court is mandatory.

42. The case at issue should be removed from FINRA's jurisdiction as mandatory arbitration outside of an Article III court is a violation of Plaintiff's Seventh Amendment rights.

### SECOND CAUSE OF ACTION

*(Permanent Injunction)*

43. Plaintiff incorporates and reasserts all prior factual allegations as though fully set forth herein.

44. Plaintiff is scheduled to begin an eight-day in-house prosecution presided over by defendant, currently scheduled to begin on July 15, 2024.

45. If Plaintiff's request for injunction is not granted by the court, he will be subject to resolution of claims by an unconstitutionally structured adjudicator, which is a here-and-now injury that cannot later be remedied.

46. Furthermore, plaintiff will suffer irreparable harm without an injunction because the ongoing FINRA enforcement proceedings will put him out of business.

47. Plaintiff is likely to prevail on claims that FINRA's hearing offices impermissibly wield power that may only be exercised by the President and those under his direct supervision.

48. Plaintiff is likely to prevail on his claim under the Seventh Amendment right to a jury trial before an Article III court because—whether in the OHO enforcement proceeding, or on appeal to the SEC—Defendant's claims are those sounding in common law and thus, belong in an Article III court before a jury.

49. The equities and public interest favor an injunction, as it is in the public interest to ensure the legitimacy of the decisionmaker in the present case in light of recent rulings from the United States Supreme Court.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1. Issue declaratory relief removing the present case from FINRA jurisdiction in accordance with Plaintiff's Seventh Amendment right to trial in an Article III court;

2. Issue a permanent injunction preventing FINRA from hearing this claim as it is a claim at common law, not subject to the public rights exception, for which Plaintiff has a Seventh Amendment right to trial in an Article III court.

Respectfully submitted this 10th day of July, 2024.

By: *_/s/ John P. Quinn_*

John P. Quinn, Esq. (Pa. Bar No. 85239)
Quinn Law Partners, LLC
Radnor Financial Center
150 N. Radnor Chester Road, Suite F200
Radnor, PA 19087
Telephone: (484) 354-8080
Email: jpquinn@quinnlp.com

Dochtor D. Kennedy, MBA, J.D.
(Co. Bar No. 45851)
HLBS Law
390 Interlocken Crescent, Suite 350
Broomfield, CO 80021
Telephone: (720) 282-5154
Facsimile: (720) 340-5022
Email: doc.kennedy@hlbslaw.com
*(Motion for Pro Hac Vice to be filed)*