**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| D. Allen Blankenship, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-3003-JFM |
| | ) | |
| Financial Industry Regulatory Authority, Inc., | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

---

**OPPOSITION TO PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

---

Melanie L. Katsur, PA Attorney I.D. 88458
Amir C. Tayrani (*pro hac vice*)
Alex Gesch (*pro hac vice*)
Max E. Schulman (*pro hac vice*)
Amalia Reiss (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
T: (202) 887-3636
F: (202) 530-9658
MKatsur@gibsondunn.com
ATayrani@gibsondunn.com
AGesch@gibsondunn.com
MSchulman@gibsondunn.com
AReiss@gibsondunn.com

*Attorneys for Defendant Financial Industry
Regulatory Authority, Inc.*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...........................................................................................................1

II. BACKGROUND ...........................................................................................................3

    A. FINRA Is A Private Company That Regulates And Disciplines Its Broker-
       Dealer Members And Associated Persons, Subject To SEC Oversight ..........................3

    B. FINRA's Disciplinary Proceeding Against Plaintiff Fulfills FINRA's Statutory
       Obligation To Enforce Its Rules And Protect Investors ....................................................6

III. LEGAL STANDARD ...................................................................................................8

IV. ARGUMENT ................................................................................................................9

    A. This Court Lacks Subject Matter Jurisdiction ................................................................9

    B. Plaintiff Has No Likelihood Of Success On The Merits ...............................................14

       1. FINRA Is A Private Entity Not Subject To The Constitution ................................14

       2. FINRA Disciplinary Proceedings Do Not Implicate The Seventh Amendment ...17

       3. Plaintiff's Unpleaded Article II Arguments Fail For Multiple Reasons................22

    C. The Remaining Requirements Weigh Heavily Against An Injunction .........................23

       1. Plaintiff Has Not Shown Irreparable Harm ...........................................................23

       2. The Equities And Public Interest Favor FINRA....................................................25

V. CONCLUSION ...........................................................................................................27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpine Sec. Corp. v. FINRA*,
  2021 WL 4060943 (D. Utah Sept. 7, 2021) ..................................................................11, 14

*Alpine Sec. Corp. v. FINRA*,
  2023 WL 4703307 (D.C. Cir. July 5, 2023) .........................................................2, 7, 12, 23, 24

*Am. Fed. of Gov't Emps. v. Biden*,
  598 F. Supp. 3d 241 (E.D. Pa. 2022) .....................................................................................9

*Atlas Roofing Co. v. OSHRC*,
  430 U.S. 442 (1977) ................................................................................................18, 19

*Axon Enter., Inc. v. FTC*,
  598 U.S. 175 (2023) .................................................................................1, 11, 12, 13, 14

*Benisek v. Lamone*,
  585 U.S. 155 (2018) (per curiam) ......................................................................................8, 25

*Bernstein v. Lind-Waldock & Co.*,
  738 F.2d 179 (7th Cir. 1984) .............................................................................................3

*Brown v. E.F. Hutton Grp., Inc.*,
  991 F.2d 1020 (2d Cir. 1993) ...........................................................................................21

*CFTC v. Schor*,
  478 U.S. 833 (1986) ........................................................................................................17

*Clark v. John Lamula Invs., Inc.*,
  583 F.2d 594 (2d Cir. 1978) .......................................................................................20, 21

*Cont'l Grp., Inc. v. Amoco Chems. Corp.*,
  614 F.2d 351 (3d Cir. 1980) ............................................................................................24

*De Beers Consol. Mines v. United States*,
  325 U.S. 212 (1945) ........................................................................................................22

*Desiderio v. NASD, Inc.*,
  191 F.3d 198 (2d Cir. 1999) ............................................................................................15

*Doe v. Boyertown Area Sch. Dist.*,
  276 F. Supp. 3d 324 (E.D. Pa. 2017) .............................................................................23, 24

*Edmonson v. Leesville Concrete Co.*,
  500 U.S. 614 (1991) ........................................................................................................14

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012) ......................................................................................................10, 12

*Epstein v. SEC*,
　416 F. App'x 142 (3d Cir. 2010) ..................................................................................15

*Erdos v. SEC*,
　742 F.2d 507 (9th Cir. 1984) .....................................................................................20

*Ferring Pharms., Inc. v. Watson Pharms., Inc.*,
　765 F.3d 205 (3d Cir. 2014) ...................................................................................8, 23

*First Jersey Sec., Inc. v. Bergen*,
　605 F.2d 690 (3d Cir. 1979) ................................................................................11, 15

*Free Enter. Fund v. PCAOB*,
　561 U.S. 477 (2010) .........................................................................................11, 12, 15

*HAPCO v. City of Phila.*,
　482 F. Supp. 3d 337 (E.D. Pa. 2020) .........................................................................23

*Helvering v. Mitchell*,
　303 U.S. 391 (1938) ....................................................................................................18

*Hohe v. Casey*,
　868 F.2d 69 (3d Cir. 1989) .........................................................................................23

*Holland v. SEC*,
　105 F.3d 665 (9th Cir. 1997) .....................................................................................21

*Jones v. Taylor*,
　2013 WL 1899852 (M.D. Pa. May 7, 2013) ..............................................................22

*Kim v. FINRA*,
　698 F. Supp. 3d 147 (D.D.C. 2023) ............................................3, 4, 11, 15, 16, 24, 25, 26, 27

*Lebron v. Nat'l R.R. Passenger Corp.*,
　513 U.S. 374 (1995) .........................................................................................15, 16, 22

*Lucia v. SEC*,
　585 U.S. 237 (2018) ....................................................................................................22

*Lugar v. Edmondson Oil Co.*,
　457 U.S. 922 (1982) ....................................................................................................17

*Manhattan Cmty. Access Corp. v. Halleck*,
　587 U.S. 802 (2019) ....................................................................................................17

*Mohlman v. FINRA*,
　2020 WL 905269 (S.D. Ohio Feb. 25, 2020) .............................................................16

*Morrow v. Balaski*,
　719 F.3d 160 (3d Cir. 2013) .......................................................................................15

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
　— F.4th —, 2024 WL 3311366 (5th Cir. July 5, 2024) ........................................22, 23

iii

*NLRB v. Jones & Laughlin Steel Corp.*,
  301 U.S. 1 (1937)..................................................................................................18

*Oceanic Steam Navigation Co. v. Stranahan*,
  214 U.S. 320 (1909)..............................................................................................18

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
  584 U.S. 325 (2018)..........................................................................................18, 22

*Passavant v. United States*,
  148 U.S. 214 (1893)..............................................................................................18

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017)..................................................................................8, 25

*Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*,
  485 F.3d 840 (6th Cir. 2007) ................................................................................21

*Saad v. SEC*,
  873 F.3d 297 (D.C. Cir. 2017) ............................................................................3, 26

*Scottsdale Cap. Advisors Corp. v. FINRA* (*Scottsdale I*),
  844 F.3d 414 (4th Cir. 2016) ..............................................................................5, 11

*Scottsdale Cap. Advisors Corp. v. FINRA* (*Scottsdale II*),
  390 F. Supp. 3d 72 (D.D.C. 2019)........................................................................10

*Scottsdale Cap. Advisors Corp. v. FINRA* (*Scottsdale III*),
  811 F. App'x 667 (D.C. Cir. 2020) (per curiam)..................................................10

*Scottsdale Cap. Advisors v. FINRA* (*Scottsdale IV*),
  678 F. Supp. 3d 88 (D.D.C. 2023)..............................................................14, 15, 17

*SEC v. Appelbaum*,
  2023 WL 2375221 (S.D. Fla. Jan. 26, 2023) ........................................................21

*SEC v. Jarkesy*,
  144 S. Ct. 2117 (2024)............................................................2, 16, 18, 19, 20, 21, 22

*SEC v. Solow*,
  2007 WL 1970806 (S.D. Fla. May 10, 2007) ........................................................21

*Stern v. Marshall*,
  564 U.S. 462 (2011)..............................................................................................19

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994)..............................................................10, 11, 12, 13, 14

*Trump v. United States*,
  144 S. Ct. 2312 (2024) ..........................................................................................23

*Walck v. Am. Stock Exch., Inc.*,
  687 F.2d 778 (3d Cir. 1982)..................................................................................21

*Winter v. NRDC*,
 555 U.S. 7 (2008)...........................................................................................................25

**Constitutional Provisions**

U.S. Const. art. II, § 2, cl. 2 ........................................................................................22

**Statutes**

15 U.S.C. § 78c(a)(3)(B)..............................................................................................17

15 U.S.C. § 78o-3(b)(2) .................................................................................................5

15 U.S.C. § 78o-3(b)(4) .................................................................................................4

15 U.S.C. § 78o-3(b)(6) ...........................................................................................1, 26

15 U.S.C. § 78o-3(b)(7) .................................................................................................5

15 U.S.C. § 78o-3(b)(8) .................................................................................................5

15 U.S.C. § 78o-3(g)(3)(A)..........................................................................................21

15 U.S.C. § 78o-3(k)(2)(D)..........................................................................................21

15 U.S.C. § 78o(a)(1)......................................................................................................4

15 U.S.C. § 78o(b)(1) .....................................................................................................4

15 U.S.C. § 78o(b)(8) .....................................................................................................4

15 U.S.C. § 78o(b)(9) .....................................................................................................4

15 U.S.C. § 78s(b)(1).......................................................................................................5

15 U.S.C. § 78s(b)(2).......................................................................................................5

15 U.S.C. § 78s(d)(2).......................................................................................................5

15 U.S.C. § 78s(g)(1).....................................................................................................26

15 U.S.C. § 78s(g)(1)(A) .................................................................................................4

15 U.S.C. § 78s(g)(1)(B).............................................................................................4, 26

15 U.S.C. § 78s(g)(1)(C).................................................................................................4

15 U.S.C. § 78y(a)(1)....................................................................................5, 6, 10, 13

**Rules**

FINRA Rule 2010 ..............................................................................................6, 7, 21, 26

FINRA Rule 2111 ...................................................................................................6, 20

FINRA Rule 2111.01 ............................................................................................................21

FINRA Rule 4511 ...........................................................................................................6, 7

FINRA Rule 8310(a) .............................................................................................................7

FINRA Rule 9231 .................................................................................................................5

FINRA Rule 9232 .................................................................................................................5

FINRA Rule 9233 .................................................................................................................5

FINRA Rule 9234 .................................................................................................................5

FINRA Rule 9235 ...............................................................................................................23

FINRA Rule 9261 .................................................................................................................5

FINRA Rule 9268(a) ...........................................................................................................24

FINRA Rule 9311 ...........................................................................................................5, 23

FINRA Rule 9311(b) ........................................................................................5, 7, 13, 24

FINRA Rule 9370(a) ........................................................................................6, 13, 24

**Other Authorities**

17 C.F.R. § 201.401(d) ......................................................................................................13

4 Fed. Reg. 3564 (Aug. 9, 1939).........................................................................................4

69 Fed. Reg. 71,256 (Dec. 8, 2004)................................................................................3, 27

72 Fed. Reg. 42,169 (Aug. 1, 2007)....................................................................................4

*Exchange Reveals Registration Data*, N.Y. Times (Oct. 2, 1934) ....................................5

FINRA By-Laws, Art. VI, § 1 .............................................................................................5

FINRA By-Laws, Art. VII, § 1 ..........................................................................................23

FINRA By-Laws, Art. VIII, § 1 .........................................................................................23

FINRA By-Laws, Art. VIII, § 3..........................................................................................23

H.R. Doc. No. 88-95 (1963) ..............................................................................................21

Donna M. Nagy, *Playing Peekaboo with Constitutional Law*,
    80 Notre Dame L. Rev. 975 (2005) ..............................................................................4

SEC, Self-Regulatory Organization Rulemaking ...............................................................4

Marianne K. Smythe, *Government Supervised Self-Regulation in the Securities Industry and the Antitrust Laws*, 62 N.C. L. Rev. 475 (1984)............................................3, 4, 5

Uniform Application for Securities Industry Registration or Transfer (Form U-4).....................17

## I.    INTRODUCTION

Seven months after FINRA filed a disciplinary complaint against Plaintiff—and a mere five days before the hearing was set to begin—Plaintiff moved for a preliminary injunction that would prevent FINRA from carrying out its vital mission to "protect investors and the public interest." 15 U.S.C. § 78o-3(b)(6). The motion should be denied for several independent reasons.[1]

First, this Court lacks jurisdiction over Plaintiff's Amended Complaint, which raises a single substantive claim under the Seventh Amendment (and an ancillary claim for injunctive relief). By statute, Plaintiff must bring that claim—if at all—before the SEC, after exhausting FINRA's internal review procedures, and then in an appropriate U.S. Court of Appeals. His challenge to the particular procedures that FINRA will use to adjudicate his individual disciplinary proceeding is not the type of exceptional, "far-reaching constitutional claim[ ]" challenging a governmental body's "structure" and "very existence" that may escape the exclusive review provisions of the Securities Exchange Act ("Exchange Act") under *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 185, 189 (2023).

Second, Plaintiff cannot carry his heavy burden to establish that he has a likelihood of success on the merits. An extensive body of precedent holds that FINRA is a private corporation, not a government agency subject to constitutional requirements, which defeats Plaintiff's Seventh Amendment claim. Jury trials pertain only to government actions, not to proceedings between private organizations and their members. The same is true of the Article II arguments Plaintiff mentions in passing in his brief but did not allege as a claim in the Amended Complaint. Moreover, Plaintiff waived any challenge to FINRA's procedures by affirmatively agreeing to register with

---

[1] FINRA has not been properly served with process and does not waive any objections.

FINRA as a securities broker and to be bound by FINRA's rules, including its rules governing disciplinary proceedings.

In addition, even setting aside FINRA's private status and Plaintiff's waiver, FINRA's disciplinary proceeding against Plaintiff for allegedly engaging in unsuitable mutual fund trades and then circumventing his employer's oversight procedures does not implicate Article III (let alone trigger the Seventh Amendment), because FINRA's disciplinary proceeding is plainly not "'the stuff of the traditional actions at common law.'" *SEC v. Jarkesy*, 144 S. Ct. 2117, 2132 (2024) (internal quotation marks omitted). Rather, it is "the stuff of" private securities industry self-regulation that dates back to the Founding and that Congress has embraced and perpetuated since the 1930s. The notion that a private group's enforcement of its own ethical rules against a member requires a jury trial finds no support whatsoever in *Jarkesy* or any other precedent.

Even if Plaintiff could demonstrate a likelihood of success, his claims of urgency and supposed irreparable harm are vastly overstated. FINRA's Department of Enforcement is not seeking to permanently bar Plaintiff from associating with FINRA member firms. And, under FINRA's rules, Plaintiff's appeal of any sanction imposed after his disciplinary proceeding would automatically stay that sanction pending internal FINRA review. This case is thus significantly different from—and far less exigent than—the case Plaintiff relies upon, *Alpine Securities Corp. v. FINRA*, where an ongoing FINRA expedited proceeding sought potential immediate expulsion of the broker-dealer member. 2023 WL 4703307, at *1 (D.C. Cir. July 5, 2023) (Walker, J., concurring).

The balance of equities and public-interest considerations also cut strongly against injunctive relief. Plaintiff waited seven months after FINRA filed its disciplinary complaint against him to bring this case, which he filed on the eve of his disciplinary hearing. Granting an injunction would stop FINRA's proceeding in its tracks, delaying resolution of the serious allegations against

Plaintiff and restitution for the victims of his alleged misconduct.  It would also encourage other respondents in FINRA proceedings to file copy-cat suits, and to delay seeking preliminary injunctions until the eleventh hour, crippling FINRA's enforcement efforts and placing the investing public at risk.

The Court should deny Plaintiff's motion and permit FINRA to move forward with its critical enforcement activities.

## II.    BACKGROUND

### A.    FINRA Is A Private Company That Regulates And Disciplines Its Broker-Dealer Members And Associated Persons, Subject To SEC Oversight.

"Self-regulation in the securities industry is nearly as old as the federal government," dating back to the founding of the Philadelphia Stock Exchange in 1790.  Marianne K. Smythe, *Government Supervised Self-Regulation in the Securities Industry and the Antitrust Laws*, 62 N.C. L. Rev. 475, 480 (1984).  For most of the nation's history, private securities exchanges and other self-regulatory organizations disciplined their members with little or no government oversight. *See* SEC Concept Release Concerning Self-Regulation, Release No. 34-50700, 69 Fed. Reg. 71,256, 71,257 (Dec. 8, 2004) ("SEC Concept Release") (recounting self-regulation's "long tradition in the U.S. securities markets"); *Kim v. FINRA*, 698 F. Supp. 3d 147, 154-57 (D.D.C. 2023) (same).

When Congress adopted the modern securities laws in the 1930s, it preserved and built upon the self-regulatory framework that "preexisted federal regulation."  *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 186 (7th Cir. 1984).  Under the Exchange Act, private self-regulatory organizations continue to exercise a primary supervisory role over their members, subject to comprehensive SEC oversight.  *See Saad v. SEC*, 873 F.3d 297, 299-300 (D.C. Cir. 2017).

The Exchange Act requires anyone seeking to sell securities to join an association of broker-dealers registered as a national securities association, which is one type of self-regulatory organization, or to associate themselves with a member (unless the person transacts securities solely on a securities exchange of which it is a member, or the SEC exempts the person from registration). *See* 15 U.S.C. § 78o(a)(1), (b)(1), (b)(8)-(9). FINRA is currently the only registered national securities association and, in that capacity, exercises self-regulatory authority over its member firms, which operate as broker-dealers in the national securities markets, and their associated persons employed as securities brokers. *Id.* § 78o-3(b)(4). In addition to FINRA, the SEC oversees almost 50 other self-regulatory organizations under the Exchange Act, including "national securities exchange[s]" such as the New York Stock Exchange and the Nasdaq Stock Market, and "registered clearing agenc[ies]" such as the Depository Trust Company, the National Securities Clearing Corporation, and the Options Clearing Corporation. *Id.* § 78s(g)(1)(A)-(C); *see* SEC, Self-Regulatory Organization Rulemaking (identifying dozens of self-regulatory organizations overseen by the SEC), https://www.sec.gov/rules/sro.shtml.

FINRA is not part of the government. It is a private not-for-profit Delaware corporation headquartered in the District of Columbia. *See Kim*, 698 F. Supp. 3d at 157-58. FINRA was formed in 2007, when its predecessor, the National Association of Securities Dealers ("NASD"), consolidated its regulation and enforcement functions with the similar functions of the New York Stock Exchange. *See* Order Approving Proposed Rule Change To Amend The By-Laws Of NASD, 72 Fed. Reg. 42,169 (Aug. 1, 2007). The NASD "owes its origins to a trade group founded in 1912," Donna M. Nagy, *Playing Peekaboo with Constitutional Law*, 80 Notre Dame L. Rev. 975, 1023-24 (2005), and the SEC approved it in 1939 as the first national securities association, 4 Fed. Reg. 3564 (Aug. 9, 1939). The New York Stock Exchange was founded in 1792, Smythe,

4

*supra*, at 480, and registered with the SEC in 1934, *Exchange Reveals Registration Data*, N.Y. Times (Oct. 2, 1934).

The government thus did not "create[ ]" FINRA or its predecessors, *contra* Mem. 2, and does not appoint *any* FINRA board members, officers, or employees.  *See* FINRA Board of Governors, bit.ly/3FmyxTr.  Nor does FINRA receive *any* state or federal funding; it is funded entirely by fees charged to its members.  *See* FINRA By-Laws, Art. VI, § 1, bit.ly/41MMgN5.

FINRA exercises its self-regulatory authority in accordance with the requirements of the Exchange Act and under close supervision by the SEC.  For example, the SEC reviews rules proposed by FINRA and approves them if they are "consistent with the requirements of [the Exchange Act]."  15 U.S.C. § 78s(b)(1), (2).  The SEC also ensures that FINRA "enforce[s] compliance" with the Exchange Act and FINRA's rules and that it "appropriately discipline[s]" its members and associated persons for violations, pursuant to rules that "provide a fair procedure for the disciplin[ary]" proceeding.  *Id.* § 78o-3(b)(2), (7), (8); *see, e.g., Scottsdale Cap. Advisors Corp. v. FINRA* (*Scottsdale I*), 844 F.3d 414, 417-18 (4th Cir. 2016).

In keeping with FINRA's obligation to provide fair disciplinary procedures, its SEC-approved rules provide for multiple layers of administrative and judicial review.  *See Scottsdale I*, 844 F.3d at 418; *see* 15 U.S.C. §§ 78s(d)(2), 78y(a)(1).  That process generally includes:  (1) an evidentiary hearing before a three-person panel at which respondents have the right to introduce evidence and call and cross-examine witnesses, *e.g.*, FINRA Rules 9231-34 (appointment of three-person hearing panel including two industry members and a FINRA hearing officer), FINRA Rule 9261 (submission of evidence and testimony); (2) an appeal to FINRA's National Adjudicatory Council, FINRA Rule 9311, during which any sanction, including a bar or expulsion, is stayed, FINRA Rule 9311(b); (3) a subsequent *de novo* appeal to the SEC, 15 U.S.C. § 78s(d)(2), which

"shall stay the effectiveness of any sanction, other than a bar or an expulsion," FINRA Rule 9370(a); and (4) a petition for review to a designated U.S. Court of Appeals, 15 U.S.C. § 78y(a)(1). *See also* FAC ¶¶ 36-38 (describing appeal rights to National Adjudicatory Council and SEC).

**B.    FINRA's Disciplinary Proceeding Against Plaintiff Fulfills FINRA's Statutory Obligation To Enforce Its Rules And Protect Investors.**

Plaintiff is a securities broker who is registered with FINRA and who has been associated with several FINRA member firms during his career.  In 2019, FINRA initiated an investigation after Plaintiff's former employer filed a termination notice with FINRA stating that Plaintiff was "terminat[ed]" for "'violation of [the] firm's policy with regard to submission of required documents for certain mutual fund transactions, failure to ensure clients were receiving [ ] benefit of mutual fund breakpoints[,] and exercising discretion without proper authorization.'"  FAC at 2 (second alteration added).  On December 7, 2023, after a thorough investigation, FINRA's Department of Enforcement brought a disciplinary complaint against Plaintiff, *id.*, alleging that from August 2016 to September 2019, Plaintiff "engaged in unsuitable mutual fund trading" in violation of FINRA Rules 2010, 2111, and 4511.  Gesch Decl. Ex. A ¶¶ 1-3.[2]  The disciplinary complaint does not allege fraud under the federal securities laws or SEC regulations, nor does it allege common-law fraud.  *See* Weber Decl. ¶ 3.

The disciplinary complaint alleges that Plaintiff violated FINRA's rules by:  (1) recommending mutual fund investments without a reasonable basis to believe that they were suitable for the customer, in violation of FINRA Rules 2111 and 2010; (2) circumventing his firm's procedures

---

[2]  FINRA Rule 2010 provides that "[a] member, in the conduct of its business, shall observe high standards of commercial honor and just and equitable principles of trade."  FINRA Rule 2111 requires in part that a member or associated person have "a reasonable basis to believe that a recommended transaction or investment strategy involving a security or securities is suitable for the customer."  FINRA Rule 4511 provides that members "shall make and preserve books and records" as required under FINRA rules, the Exchange Act, and applicable Exchange Act rules.

for supervising mutual fund transactions, in violation of FINRA Rule 2010; and (3) mismarking 250 purchases of mutual funds as unsolicited, in violation of FINRA Rules 4511 and 2010. Gesch Decl. Ex. A ¶¶ 31-52.

Based on these alleged violations, FINRA's Department of Enforcement seeks sanctions under FINRA Rule 8310(a). Gesch Decl. Ex. A at 11. Contrary to Plaintiff's suggestion, the Department of Enforcement does not seek to "'put [him] out of business.'" Mem. 18 (quoting concurrence to unpublished motions panel order in *Alpine Securities Corp. v. FINRA* staying proceeding seeking immediate expulsion of FINRA member). Instead, the Department of Enforcement's pre-hearing brief confirms that it seeks only a two-year suspension of Plaintiff's association with any FINRA member firm, a $20,000 fine, and an order of disgorgement of $43,032.36 plus interest "to be paid as restitution to impacted customers." D.E. 17-2, at 24. If the disciplinary proceeding culminates in the imposition of one or more of these sanctions, Plaintiff will have the right to appeal the hearing panel's decision to FINRA's National Adjudicatory Council, which will automatically stay the decision pending further FINRA review. *See* FINRA Rule 9311(b).

Plaintiff, through counsel, answered the FINRA disciplinary complaint on January 4, 2024. The answer did not assert any challenge to the constitutionality of FINRA's disciplinary proceeding or assert that he was entitled to a jury trial under the Seventh Amendment. Gesch Decl. Ex. B. On January 23, the hearing officer set Plaintiff's hearing to begin July 15, 2024. *Id.* Ex. C.

More than seven months after FINRA filed its disciplinary complaint, and only five days before the July 15 hearing was set to begin, Plaintiff filed a Complaint and motion for temporary restraining order and preliminary injunction in this Court. D.E. 1, 1-3, 1-4. To facilitate orderly consideration of the issues, FINRA and Plaintiff jointly moved the FINRA hearing officer to postpone the hearing until after this Court's resolution of Plaintiff's amended motion for a preliminary

7

injunction. *See* D.E. 5. Plaintiff thereafter filed an Amended Complaint and an amended motion for a preliminary injunction. Plaintiff's Amended Complaint raises a single substantive count contending that the FINRA disciplinary proceeding violates his Seventh Amendment right to a jury trial in an Article III court, and seeks declaratory and injunctive relief in "the present case" enjoining FINRA from "hearing this claim." FAC ¶¶ 42-45; *id.* at 10-11 (Request for Relief). Plaintiff's preliminary-injunction motion seeks to enjoin FINRA from proceeding with the disciplinary hearing or taking adverse action until resolution of his claim in this Court. D.E. 19, at 3.

### III.    LEGAL STANDARD

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014). Plaintiff "'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest.'" *Id.* A movant "must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Only if these "gateway factors" are met should the Court consider the others. *Id.* In addition, "[a]s a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success" and irreparable harm; a court may deny relief even if it finds or assumes a likelihood of success and irreparable harm where "the balance of equities and the public interest tilt[ ] against the[ ] request for a preliminary injunction." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam). Movants must also "generally show reasonable diligence." *Id.* at 159.

8

## IV.    ARGUMENT

The Court should deny Plaintiff's request for preliminary-injunctive relief for multiple reasons. As a threshold matter, this Court lacks subject matter jurisdiction to hear Plaintiff's Seventh Amendment claim—the only substantive claim alleged in the Amended Complaint—because he is required to raise that claim before the SEC and then in a U.S. Court of Appeals. Nor does Plaintiff have any likelihood of success on the merits of this claim—or the Article II arguments mentioned solely in his motion for a preliminary injunction—because, among other reasons, FINRA is not a state actor subject to constitutional requirements. Plaintiff also fails to show irreparable harm. FINRA is not seeking to impose an immediately effective sanction on Plaintiff, as FINRA's rules will stay the effect of any sanction pending Plaintiff's internal FINRA appeal.

The equities likewise weigh decisively against Plaintiff: He waited seven months after his FINRA disciplinary proceeding began to seek an injunction on the eve of the hearing. Even if Plaintiff's constitutional claim could be heard in this Court, and had merit, his inexcusable delay— and the serious harm that an injunction would inflict on FINRA's essential regulatory responsibilities and the well-being of investors—would independently warrant denying relief.

### A.    This Court Lacks Subject Matter Jurisdiction.

This Court cannot grant a preliminary injunction unless Plaintiff carries his burden to demonstrate that the Court has subject matter jurisdiction over the Amended Complaint. *See, e.g., Am. Fed. of Gov't Emps. v. Biden*, 598 F. Supp. 3d 241, 248-49 (E.D. Pa. 2022) ("This action will be dismissed in its entirety for lack of subject-matter jurisdiction. Consequently, the court does not reach . . . plaintiffs' motion for a preliminary injunction . . . ."). Plaintiff cannot meet that burden. The Exchange Act's exclusive review framework deprives this Court of subject matter jurisdiction and requires that Plaintiff's Seventh Amendment challenge to his FINRA disciplinary

proceeding be brought in the first instance before the SEC, after Plaintiff has exhausted his avenues for internal FINRA review, and then in an appropriate U.S. Court of Appeals.

In *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), the Supreme Court held that Congress intends a "comprehensive enforcement structure" to preclude district court jurisdiction over a claim where the claim (1) could be "meaningfully addressed in the Court of Appeals" after the exhaustion of the administrative process, (2) is not "wholly collateral to [the] statute's review provisions," and (3) is not "outside the agency's expertise." *Id.* at 212, 215-16 (internal quotation marks omitted); *see also Elgin v. Dep't of Treasury*, 567 U.S. 1, 21 (2012) (holding that the Civil Service Reform Act precluded district court jurisdiction over constitutional claims because they could "receive meaningful review" within the statutory scheme, which provided for review in a court of appeals after conclusion of the administrative process).

Courts have relied on *Thunder Basin* in dismissing multiple suits challenging FINRA's rules and enforcement activities, including for purported constitutional violations. As these courts have recognized, the Exchange Act's exclusive review framework provides for direct review in a court of appeals after the conclusion of administrative proceedings. *See* 15 U.S.C. § 78y(a)(1).

For example, the D.C. Circuit affirmed the dismissal of a suit challenging "FINRA's governance and regulatory decisions" for lack of subject matter jurisdiction because "Congress has mandated [that such claims] be challenged administratively and reviewed by appellate courts." *Scottsdale Cap. Advisors Corp. v. FINRA* (*Scottsdale II*), 390 F. Supp. 3d 72, 75 (D.D.C. 2019), *aff'd*, *Scottsdale Cap. Advisors Corp. v. FINRA* (*Scottsdale III*), 811 F. App'x 667, 668 (D.C. Cir. 2020) (per curiam) ("The district court properly applied the *Thunder Basin* test to determine that the securities laws divest it of jurisdiction over Scottsdale's suit."). The Fourth Circuit similarly affirmed dismissal for lack of subject matter jurisdiction of a suit claiming that a FINRA

10

disciplinary proceeding was statutorily "unauthorized," because Congress "unambiguously chan-neled [the plaintiff's] claim—whether FINRA ha[d] exceeded its authority in charging [the plain-tiff]—to the SEC for determination in the first instance." *Scottsdale I*, 844 F.3d at 424. The District of Utah dismissed a broker-dealer's "dispute with FINRA about its own rules"—including "allegations of constitutional violation of due process"—because the Exchange Act "provides the exclusive appellate process for all decisions related to the outcome of [the] disciplinary hearing." *Alpine Sec. Corp. v. FINRA*, 2021 WL 4060943, at *5-6 (D. Utah Sept. 7, 2021). And more re-cently, the D.C. District Court held that a plaintiff failed to establish jurisdiction over Article III and Fifth and Seventh Amendment challenges to FINRA in light of "the Exchange Act's exclusive review provisions." *Kim*, 698 F. Supp. 3d at 168.[3]

The Supreme Court's recent decision in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), confirmed that a "special statutory review scheme"—including "the one used in . . . the Exchange Act"—may "preclude district courts from exercising jurisdiction over challenges to federal agency action." *Id.* at 185 (citing *Thunder Basin*, 510 U.S. at 207). But as *Axon* clarified, the Exchange Act and other exclusive review frameworks do not displace district court jurisdiction over certain "far-reaching constitutional claims" challenging an agency's "structure" and "very existence," such as the challenge to the restrictions on the President's power to remove members of the Public Company Accounting Oversight Board ("PCAOB") at issue in *Free Enterprise Fund v. PCAOB*,

---

[3] In *First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690 (3d Cir. 1979), the Third Circuit relied on the analogous doctrine of administrative exhaustion to grant a writ of mandamus dismissing constitutional claims against the NASD for lack of subject matter jurisdiction. *Id.* at 696-97. Like Plaintiff here, First Jersey could not excuse its failure to exhaust because it was unable to demon-strate that it would suffer irreparable harm where any NASD sanctions "would be subject to the statutorily prescribed review procedure, including review by the court of appeals." *Id.* at 696. Nor could First Jersey excuse exhaustion by establishing a "clear and unambiguous constitutional vio-lation" because, among other reasons, the NASD was "not a state agency" subject to the Constitu-tion's due-process requirements. *Id.* at 697-98.

11

561 U.S. 477 (2010). *Axon*, 598 U.S. at 185-89. The Court in *Axon* framed the question as whether the claims before it were "more like *Thunder Basin* and *Elgin* or more like *Free Enterprise Fund*." *Id.* at 188. The Court concluded that the claims—challenges to the restrictions on removal of SEC and FTC administrative law judges and to the FTC's combination of prosecutorial and adjudicative functions—were akin to those in *Free Enterprise Fund* and thus subject to review in a district court, because the claims "charge[d] that an agency is wielding authority unconstitutionally in all or a broad swath of its work." *Id.* at 189.

The challenges in *Axon* to SEC and FTC administrative law judges went to those agencies' "structure or very existence." 598 U.S. at 189. By contrast, Plaintiff's Seventh Amendment claim is "more like *Thunder Basin* and *Elgin*," *id.* at 188, because that claim challenges the enforcement procedures FINRA is using in Plaintiff's particular case. FAC ¶¶ 42-45; *Elgin*, 567 U.S. at 17 n.6 (noting that one of the claims held precluded in *Thunder Basin* was a "due process challenge to a statute that permitted a regulatory agency, before a hearing, to immediately fine the petitioner for noncompliance with the statute"). If Plaintiff prevails on his claim, FINRA will not cease to exist or need to be restructured. Rather, the ruling would affect only "the present case" and whether FINRA could "hear[ ] this claim" outside an Article III court with a jury. FAC at 10-11 (Request For Relief). Plaintiff's claim is therefore unlike the constitutional challenge currently under consideration by the D.C. Circuit in *Alpine*, *see* Mem. 10, which concerns broad, structural challenges to FINRA under Article II's appointments and removal requirements and the private nondelegation doctrine. *See Alpine*, 2023 WL 4703307, at *1-4 (Walker, J., concurring).

Each of the three *Thunder Basin* factors confirms that district court jurisdiction is precluded over Plaintiff's Seventh Amendment claim: precluding district court jurisdiction would not "'foreclose all meaningful judicial review,'" the claim is not "'wholly collateral'" to the statutory review

provisions, and the claim is not "'outside the agency's expertise.'" *Axon*, 598 U.S. at 186 (quoting *Thunder Basin*, 510 U.S. at 212-13).

First, precluding district court jurisdiction over Plaintiff's claim would not "'foreclose all meaningful judicial review'" because "[r]eview of agency action in a court of appeals can alone 'meaningfully address[ ]' a party's claims," including claims challenging agency "procedure." *Axon*, 598 U.S. at 190 & n.2 (second alteration in original; citation omitted) (providing example of a "company's asserted entitlement to an earlier hearing"). Plaintiff concedes that he could appeal any adverse decision through FINRA's internal appellate procedures and thereafter to the SEC. *See* FAC ¶¶ 36-38. Plaintiff's internal appeal would stay the effectiveness of any sanction pending further review within FINRA, FINRA Rule 9311(b), and the appeal to the SEC would further "stay the effectiveness of any sanction, other than a bar or an expulsion," which FINRA's Department of Enforcement does not seek here. FINRA Rule 9370(a); *see also* 17 C.F.R. § 201.401(d) (providing further authority for the SEC to order discretionary stay). FINRA's prehearing brief confirms that it seeks a two-year suspension, a $20,000 fine, and an order of disgorgement "to be paid as restitution to impacted customers." D.E. 17-2, at 24; *see* Weber Decl. ¶¶ 6-8. Any disciplinary order imposing such sanctions would therefore be automatically stayed pending appeal within FINRA and thereafter to the SEC, and Plaintiff then could seek judicial review of any adverse SEC ruling in a federal court of appeals. *See* 15 U.S.C. § 78y(a)(1).

The "collateralism factor" also favors dismissal because, unlike in *Axon*, Plaintiff's claim challenges "actions taken" in enforcement proceedings—in particular, FINRA's supposedly unfair procedures in his particular case. 598 U.S. at 192. Thus, in contrast to the removal claim in *Axon*, Plaintiff's Seventh Amendment claim "address[es] the sorts of procedural or evidentiary matters

13

an agency often resolves on its way to a merits decision" and therefore is not collateral to FINRA's decision. *Id.* at 193.

Nor are Plaintiff's allegations "outside the agency's expertise." *Thunder Basin*, 510 U.S. at 212. His claim is expressly "intertwined with or embedded in matters on which the [SEC is] expert"—the procedures and rights available in FINRA disciplinary proceedings. *Axon*, 598 U.S. at 195; *see Alpine*, 2021 WL 4060943, at *5 ("FINRA's authority to conduct hearings, as well as to promulgate rules and operating procedures, is within the [SEC's] expertise").

Accordingly, all three *Thunder Basin* factors point decisively to this Court's absence of jurisdiction over Plaintiff's Seventh Amendment claim (and his ancillary injunctive-relief claim).

**B.    Plaintiff Has No Likelihood Of Success On The Merits.**

Even if Plaintiff could establish this Court's jurisdiction, his arguments would still fail on the merits. As Plaintiff admits, FINRA is a private company, not a government actor subject to constitutional scrutiny, and FINRA's procedures would not violate the Seventh Amendment even if FINRA were subject to constitutional requirements.

**1.    FINRA Is A Private Entity Not Subject To The Constitution.**

"[T]he conduct of private parties lies beyond the Constitution's scope in most instances." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991). Plaintiff has not met the stringent criteria for establishing that FINRA—a private, "non-governmental" company, FAC ¶ 10—is actually part of the government for constitutional purposes or is engaged in state action triggering constitutional requirements when it discharges its self-regulatory responsibilities. Numerous courts have found the opposite. *See, e.g.*, *Scottsdale Cap. Advisors v. FINRA* (*Scottsdale IV*), 678 F. Supp. 3d 88, 106 (D.D.C. 2023) (holding that Seventh Amendment challenge to FINRA disciplinary proceeding was unlikely to succeed on the merits based on absence of state action).

14

*Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995), recognized an exceptional category of nominally private companies—there, Amtrak—that are actually "part of the Government" for constitutional purposes because the government "create[d]" the corporation for "governmental objectives" and "retains for itself permanent authority to appoint a majority of the directors of that corporation." *Id.* at 397, 400. FINRA does not possess *any* of those unusual characteristics: The government did not create FINRA, *see Scottsdale IV*, 678 F. Supp. 3d at 103; *supra* at 4-5, does not appoint a single member of its board, *see* FINRA Board of Governors, bit.ly/3FmyxTr, and does not fund or otherwise control it, *see Kim*, 698 F. Supp. 3d at 157-58 (same); *see also Desiderio v. NASD, Inc.*, 191 F.3d 198, 206-07 (2d Cir. 1999) (discussing the NASD).

In *Free Enterprise Fund*, the Supreme Court highlighted the stark differences between FINRA and other "*private* self-regulatory organizations in the securities industry[,] such as the New York Stock Exchange," on the one hand, and "Government-created, Government-appointed" entities like the PCAOB and Amtrak, on the other. 561 U.S. at 484-85 (emphasis added). As the Court recognized, only the latter are "'part of the government' for constitutional purposes." *Id*. at 486 (quoting *Lebron*, 513 U.S. at 397). Even if this language were "technically *dictum*," this Court "cannot lightly ignore the force of Supreme Court *dicta*." *Morrow v. Balaski*, 719 F.3d 160, 169 (3d Cir. 2013).

Courts nationwide agree that FINRA, like its predecessor the NASD, "is a private actor," not the government. *Desiderio*, 191 F.3d at 206-07. As the Third Circuit emphasized as to the NASD, "Congress preferred self-regulation by a *private* body over direct involvement of a governmental agency." *First Jersey Sec., Inc.*, 605 F.2d at 698; *see also Epstein v. SEC*, 416 F. App'x 142, 148 (3d Cir. 2010) ("Epstein cannot bring a constitutional due process claim against the

15

NASD, because the NASD is a private actor, not a state actor.") (alterations and internal quotation marks omitted).  In short, "no court has ever held that FINRA or its relationship with the SEC is unconstitutional."  *Kim*, 698 F. Supp. 3d at 153; *see Mohlman v. FINRA*, 2020 WL 905269, at *6 (S.D. Ohio Feb. 25, 2020) ("Courts have held without exception that FINRA is a private entity" (collecting cases)), *aff'd*, 977 F.3d 556 (6th Cir. 2020).

Plaintiff does not acknowledge, much less satisfy, *Lebron*.  Indeed, he repeatedly concedes that FINRA is "non-governmental," FAC ¶ 10, and a "private corporation," "not . . . a government agency," Mem. 2; *see also id.* at 17 ("a private company").  He also (belatedly) admits that FINRA "has historically prevailed in its argument that it is not a state actor," *id.* at 17, and acknowledges the extensive precedent expressly holding that FINRA is not part of the government.  Plaintiff states only, in conclusory fashion, that "the tide has clearly changed for Defendant in a post-*Jarkesy* world."  *Id.*  But *Jarkesy* did not address (let alone change) the test for treating a nominally private company as part of the government, and Plaintiff is unable to cite any case—either before or after *Jarkesy*—in which a court has determined that FINRA is a state actor or otherwise subject to constitutional requirements.

In short, *Jarkesy*'s analysis of the Seventh Amendment's application to the SEC, a *government* agency, has no bearing on the separate question of what entities are part of the government. The Supreme Court in *Jarkesy* did not cite, much less abrogate, *Lebron* or suggest that the holding in *Jarkesy* applies to private actors.  *See* Mem. 16 (conceding that "*Jarkesy* concerns the SEC, rather than FINRA").  Plaintiff thus provides no basis for this Court to depart from the settled judicial consensus rejecting constitutional claims—including Seventh Amendment claims—

16

against FINRA because FINRA is not part of the government.  *See Scottsdale IV*, 678 F. Supp. 3d at 106.[4]

### 2.    FINRA Disciplinary Proceedings Do Not Implicate The Seventh Amendment.

Even if FINRA's disciplinary proceedings were generally subject to constitutional require-ments, Plaintiff's Seventh Amendment claim would still fail on the merits for multiple reasons.

As an initial matter, FINRA members and associated persons registered with FINRA af-firmatively agree to join or associate with FINRA and to abide by its rules, including its discipli-nary procedures.  *See* Uniform Application for Securities Industry Registration or Transfer (Form U-4), Section 15A ¶ 2 ("[I]n consideration of the jurisdictions and SROs receiving and considering my application, I submit to the authority of the jurisdictions and SROs and agree to comply with all . . . by-laws and rules and regulations of the jurisdictions and SROs as they are or may be adopted, or amended from time to time."), bit.ly/3LyqqpO; 15 U.S.C. § 78c(a)(3)(B) (defining "member" of registered securities association as any broker or dealer that agrees to be regulated by such association, including by enforcement of compliance with association's "own rules").  Plaintiff affirmatively registered with FINRA as a securities broker in 1997 and has maintained that registration over the ensuing 27 years during his association with multiple FINRA member firms.  Gesch Decl. Ex. A ¶¶ 4-6.  In so doing, Plaintiff knowingly relinquished any right he might otherwise have had to defend himself against FINRA's allegations before a jury in federal court.  *See CFTC v. Schor*, 478 U.S. 833, 848 (1986) (Article III and jury-trial rights are "subject to waiver, just as are other personal constitutional rights").

---

[4] Nor does Plaintiff even attempt to establish that FINRA's disciplinary hearing is one of the "few limited circumstances," *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019), in which a private entity's conduct is "fairly attributable to" the government and thus state action subject to constitutional requirements, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  *Contra* Mem. 17 (citing *Halleck* in passing without analysis).

In addition, FINRA's disciplinary allegations against Plaintiff concern public rights categorically outside the scope of Article III and therefore do not implicate the Seventh Amendment. "[W]hen Congress properly assigns a matter to adjudication in a non-Article III tribunal, 'the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder.'" *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 345 (2018). Thus, the only question here is whether Article III requires Plaintiff's disciplinary proceeding to be heard in a federal court. Because it does not, Plaintiff's Seventh Amendment claim fails.

In determining whether an adjudication must be heard in an Article III tribunal subject to the Seventh Amendment's requirements, the Supreme Court has distinguished between "'public rights'" and "'private rights.'" *Oil States*, 584 U.S. at 334. In contrast with private rights, there is no constitutional impediment to the "adjudication of public rights [by] entities other than Article III courts." *Id.*

Applying those principles, the Supreme Court has long upheld statutes that authorize non-Article III bodies to decide "actions that were not suits at common law or in the nature of such suits." *Jarkesy*, 144 S. Ct. at 2138 (alterations and internal quotation marks omitted). For example, executive agencies may conduct adjudications and impose monetary sanctions under tariff laws, *Passavant v. United States*, 148 U.S. 214, 221-22 (1893); immigration laws, *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 338-40 (1909); tax laws, *Helvering v. Mitchell*, 303 U.S. 391, 402 (1938); labor laws, *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937); and workplace-safety laws, *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 449-61 (1977).

Under that long line of precedent, even if Plaintiff could establish that the FINRA disciplinary proceeding against him is subject to some constitutional requirements, those requirements would not include Article III or the Seventh Amendment because FINRA's disciplinary action

18

against Plaintiff would qualify as a matter involving public rights. The "hallmark that [the Supreme Court] ha[s] looked to in determining if a suit concerns private rights is whether it 'is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789.'" *Jarkesy*, 144 S. Ct. at 2132 (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)) (internal quotation marks omitted). The self-regulatory mechanisms of the securities industry, which have provided for private investigation and adjudication of broker conduct since the 1790s, have never been "the stuff of the traditional actions at common law." They have been "the stuff of" private industry self-regulation pursuant to privately developed and implemented procedures—a system Congress embraced and perpetuated in the 1930s. *See supra* at 3-4.

The securities industry has developed and enforced ethical rules for broker-dealers since the first days of the Republic; these rules are neither statutory nor common law, but private and contractual. To ask whether these private rules were "the stuff of the traditional actions at common law," *Jarkesy*, 144 S. Ct. at 2132, answers itself. When Congress first entered the realm of securities regulation in the 1930s, it made the conscious and explicit decision to leave industry self-regulation in place. Plaintiff's theory necessarily means that *Jarkesy*—a case about a government agency—implicitly made industry self-regulation unconstitutional under Article III and the Seventh Amendment. This would disrupt longstanding practice across a host of industries. *See id.* at 2134-36 (looking to longstanding practice as a guide to the scope of the jury-trial right).

That conclusion is underscored by the actual rules at issue here. FINRA alleges that Plaintiff violated FINRA's rules by engaging in mutual fund trades that were unsuitable for his customers and then circumventing his firm's ability to monitor that conduct. *See supra* at 6-8. These suitability requirements, like the technical Occupational Safety and Health Act building regulations at issue in *Atlas Roofing*, 430 U.S. at 444-46, do not "borrow [their] cause of action from the

19

common law," *Jarkesy*, 144 S. Ct. at 2137.  In that respect, the suitability requirements—embodied in FINRA's privately formulated rules—are far different from the congressionally enacted anti-fraud statutes at issue in *Jarkesy*, which, when enforced by the government, require an Article III tribunal because they "replicate common law fraud."  *Id.* at 2127.  Unlike a government enforce-ment action alleging violations of "the antifraud provisions" of the securities laws, *id.* at 2125, a FINRA disciplinary action against a securities broker for allegedly recommending unsuitable in-vestments and evading his firm's supervisory procedures is not "made of the stuff of the traditional actions at common law" and thus need not be tried in an Article III court, *id.* at 2132 (internal quotation marks omitted).

Plaintiff's counterarguments are unavailing.  He relies primarily on out-of-context quota-tions from out-of-circuit cases (often arising from cases "brought by the SEC," Mem. 13) that suggest only that a broker's recommendation of unsuitable investments to a customer *could* give rise to a fraud claim under the securities laws—but that it need not necessarily do so.  *See id.* at 11-13.  Many of these cases trace back to *Clark v. John Lamula Investors, Inc.*, 583 F.2d 594 (2d Cir. 1978).  Although the Second Circuit there held that unsuitable investments could serve as the predicate for a fraud claim, the decision makes clear that an unsuitability violation standing alone does *not* establish fraud.  *See id.* at 601 ("Nevertheless, we find that the judge did emphasize the requirement of scienter sufficiently to negate any fleeting belief by the jury that a violation of the NASD Rules or the mere sale of unsuitable securities is a per se violation of [SEC] Rule 10b-5.").  A suitability-based fraud claim also requires proof of scienter, *id.*, which is not required for a violation of FINRA's unsuitability rule.  *See* FINRA Rule 2111; *see also Erdos v. SEC*, 742 F.2d 507, 508 (9th Cir. 1984) (the NASD's suitability rule did not require a showing that a broker acted

20

with scienter); *Holland v. SEC*, 105 F.3d 665 (9th Cir. 1997) (table) (sustaining SEC ruling that respondent violated NASD suitability rule even though "he acted in good faith").[5]

The distinction between fraud under the federal securities laws and unsuitability under FINRA's rules reflects the fact that FINRA's suitability rule is based on "ethical" standards governing "professional conduct," not legal concepts of fraud. *See* FINRA Rule 2111.01 (explaining that the rule "is intended to promote ethical sales practices and high standards of professional conduct"). FINRA's suitability rule effectuates FINRA's statutory mandate to maintain "standards" of professional "responsibility" in the securities industry, 15 U.S.C. § 78o-3(g)(3)(A), (k)(2)(D), and emerges from a history of professional ethical standards that are a different "'ancestor'" than the common-law fraud principles underpinning the statutory antifraud claims in *Jarkesy*, 144 S. Ct. at 2130; *see Walck v. Am. Stock Exch., Inc.*, 687 F.2d 778, 786 (3d Cir. 1982) ("The most important advantage of self-regulation . . . is its potential for establishing and enforcing what Mr. Justice Douglas referred to as 'ethical standards beyond those any law can establish.'" (citation omitted)); H.R. Doc. No. 88-95, pt. 4, at 694-95 (1963) (similar). Likewise, FINRA Rule 2010 requires members to "observe high standards of commercial honor and just and equitable principles of trade." FINRA Rule 2010.

Plaintiff's alleged violations of FINRA's suitability rule, and rules designed to monitor compliance with that rule, are thus fundamentally different from the "common law fraud"-based statutory violations alleged in *Jarkesy*. 144 S. Ct. at 2130. Because disciplinary proceedings based

---

[5] The unpublished district court decision in *SEC v. Appelbaum*, 2023 WL 2375221, at *4 (S.D. Fla. Jan. 26, 2023), also traces directly back to the Second Circuit's decision in *Clark*. *Appelbaum* analyzed a fraud claim by citing a standard from *SEC v. Solow*, 2007 WL 1970806, at *3 (S.D. Fla. May 10, 2007), which relied on the standard from *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1031 (2d Cir. 1993), which in turn relied on *Clark*. *See also*, *e.g.*, Mem. 11 (quoting *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 848 (6th Cir. 2007), which similarly relied on *Brown*, 991 F.2d at 1031, which in turn relied on *Clark*).

on those FINRA rules have no "close relationship" to claims tried in a court at common law, *id.*, they fall outside the scope of Article III and thus do not trigger the Seventh Amendment, either. *See Oil States*, 584 U.S. at 345.

**3.        Plaintiff's Unpleaded Article II Arguments Fail For Multiple Reasons.**

Plaintiff's preliminary-injunction brief also raises, in passing, arguments under Article II of the Constitution, Mem. 16-17—arguments found nowhere in his Amended Complaint, which raises only a Seventh Amendment claim and an ancillary claim for injunctive relief, FAC ¶¶ 41-45.  The Court should not consider this unpleaded claim at all, because "a court may not grant an injunction when the issues raised in the motion are entirely different from those raised in the complaint." *Jones v. Taylor*, 2013 WL 1899852, at \*2 (M.D. Pa. May 7, 2013) (citing *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220-23 (1945)).

Even if properly pleaded, however, any Article II claim would fail on the merits.  Like Plaintiff's Seventh Amendment claim, this claim—which apparently seeks to extend Article II's appointment and removal requirements to FINRA—would be foreclosed by Plaintiff's failure to establish that FINRA is part of the government under *Lebron*.  *Supra* at 14-17; *see*, *e.g.*, *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, — F.4th —, 2024 WL 3311366, at \*17 (5th Cir. July 5, 2024) (holding that a "private entity" is "not subject to Article II's Appointments Clause" or removal requirements and that "*Lebron* is the governing test to determine whether an entity is private or public").  And by affirmatively registering with FINRA as a securities broker, Plaintiff waived any challenge to its structure under Article II.  *Supra* at 17.

Moreover, Article II's appointment and removal requirements apply only to the subset of government actors who qualify as "Officers of the United States" holding offices "established by Law."  U.S. Const. art. II, § 2, cl. 2.  But unlike SEC ALJs, *see Lucia v. SEC*, 585 U.S. 237, 238 (2018), neither the office nor the duties, salary, or means of appointment of FINRA hearing officers

22

are specified by statute, *see Trump v. United States*, 144 S. Ct. 2312, 2348 (2024) (Thomas, J., concurring) ("'established by law' refers to an office that Congress creates 'by statute'").  When Congress, in adopting the Exchange Act, chose to build on the preexisting system of self-regulation in the securities context, it explicitly decided not to establish federal "offices" to carry out these private functions.  FINRA itself created its board of directors, the Office of Hearing Officers, and National Adjudicatory Council through its by-laws and rules.  *See* FINRA By-Laws, Art. VII, § 1; Art. VIII, §§ 1, 3, bit.ly/44aU3Vs; FINRA Rules 9235, 9311.  Thus, even if Plaintiff could somehow surmount the "insuperable hurdle" that FINRA is not part of the government, *National Horsemen's*, 2024 WL 3311366, at \*17, an Article II claim would still fail because FINRA's hearing officers do not hold offices established by law and thus are not Officers of the United States.

> **C.     The Remaining Requirements Weigh Heavily Against An Injunction.**

"A party's failure to demonstrate a likelihood of success in the litigation . . . 'must necessarily result in the denial of a preliminary injunction.'"  *Doe v. Boyertown Area Sch. Dist.*, 276 F. Supp. 3d 324, 375-76 (E.D. Pa. 2017), *aff'd*, 897 F.3d 518 (3d Cir. 2018).  Nevertheless, the other requirements independently confirm that Plaintiff's motion should be denied.

> **1.     Plaintiff Has Not Shown Irreparable Harm.**

Plaintiff fails to show irreparable harm absent an injunction.  Of course, if the Court rejects Plaintiff's constitutional arguments, his claim of irreparable constitutional harm necessarily fails.  *E.g.*, *HAPCO v. City of Phila.*, 482 F. Supp. 3d 337, 361 (E.D. Pa. 2020).  Moreover, it is well-established that "[c]onstitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction." *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989).

Plaintiff fails to identify any other impending harms that necessitate the "extraordinary remedy" of preliminary-injunctive relief.  *Ferring Pharms.*, 765 F.3d at 210.  Citing Judge Walker's tentative concurrence to a motions panel order in *Alpine*, Plaintiff claims that the FINRA

"'proceedings will put [him] out of business.'"  Mem. 18 (alteration in original).  But Plaintiff ignores that the plaintiff in *Alpine* was facing potential immediate expulsion from FINRA, whereas here the Department of Enforcement is seeking only a two-year suspension, a $20,000 fine, and an order of disgorgement "to be paid as restitution to impacted customers."  D.E. 17-2, at 24. Plaintiff does not explain how those remedies would "put him out of business."

Nor does Plaintiff show that there is any urgency to his claims.  To show irreparable harm, "a plaintiff must demonstrate a clear showing of immediate irreparable injury or a presently existing threat; an injunction may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights."  *Boyertown*, 276 F. Supp. 3d at 408 (alterations and internal quotation marks omitted).  There is no imminence to FINRA's potential imposition of disciplinary sanctions on Plaintiff.  Following the currently unscheduled hearing, a period of several months will likely pass before a decision is issued.  Under FINRA's rules, the hearing officer has 60 days after the final date for filing proposed findings of fact, conclusions of law, and post-hearing briefs, or after an alternative date set by the Chief Hearing Officer, to prepare a written decision reflecting the views of the hearing panel.  FINRA Rule 9268(a).  And once the hearing panel has issued a decision, any order imposing sanctions on Plaintiff would be automatically stayed pending Plaintiff's appeal within FINRA and thereafter to the SEC.  *See* FINRA Rule 9311(b); FINRA Rule 9370(a) (providing for stay pending SEC review unless FINRA orders a bar or expulsion, which are not sought here).

In short, Plaintiff has not shown that the "degree of harm" he faces from simply preparing for a hearing is "sufficient to justify preliminary injunctive relief."  *Kim*, 698 F. Supp. 3d at 170; *see also Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (an injunction

cannot "'be issued merely to allay the fears and apprehensions or to soothe the anxieties'" of the plaintiff).

### 2. The Equities And Public Interest Favor FINRA.

Even if Plaintiff could show a likelihood of success on the merits and irreparable harm, the Court should "deny preliminary injunctive relief solely on the balance of equities and public interest factors." *Kim*, 698 F. Supp. 3d at 172. Those considerations "strongly disfavor the requested relief and would outweigh even a successful showing on the other two factors." *Id.*; *see also Reilly*, 858 F.3d at 179 ("If the[ ] gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.").

An "injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter v. NRDC*, 555 U.S. 7, 32 (2008). In *Benisek*, 585 U.S. 155, the Supreme Court made clear that, even where (unlike here) a plaintiff is likely to succeed on a constitutional claim, courts may deny injunctive relief based on the balance of equities and public interest. *Id.* at 160. In that partisan-gerrymandering case, the Court affirmed the denial of a preliminary injunction in light of the plaintiffs' "unnecessary" delay in seeking relief, the "'disruptive effect upon the electoral process,'" and the "legal uncertainty surrounding any potential remedy" attributable to a pending appeal. *Id.* The Court explained that the district court acted within its "sound discretion" in denying a preliminary injunction because, "[e]ven if we assume . . . that plaintiffs were likely to succeed on the merits of their claims, the balance of equities and the public interest tilted against their request for a preliminary injunction." *Id.* at 158, 161.

Plaintiff's behavior here is similarly dilatory. He waited *seven months* after the filing of FINRA's disciplinary complaint to file this suit. *See supra* at 6-8. That is not the behavior of a party whose legal needs are urgent. In less egregious circumstances, the District Court for the

25

District of Columbia found that the plaintiff had not "acted with alacrity" where he delayed filing suit for 38 days after FINRA commenced its disciplinary proceeding and then waited another 3 days to request preliminary-injunctive relief. *Kim*, 698 F. Supp. 3d at 170-71. Plaintiff waited over five times as long here, which "counsel[s] against granting preliminary injunctive relief." *Id.*

And in terms of the public interest, a preliminary injunction would pose serious risks to investors and disrupt "FINRA's regulatory mission and ability to enforce its own rules." *Kim*, 698 F. Supp. 3d at 170. The Exchange Act charges FINRA with "protect[ing] investors and the public interest." 15 U.S.C. § 78o-3(b)(6). And FINRA is specifically required to "enforce compliance" with the Exchange Act and "its own rules." *Id.* § 78s(g)(1), (1)(B). "Suspending FINRA's ability to enforce its own rules would harm investors" and would "interfere with the 'efficiency, reliability, and safety' of U.S. capital markets." *Kim*, 698 F. Supp. 3d at 171.

Here, Plaintiff is alleged to have violated, among other rules, FINRA Rule 2010, which requires FINRA members to "observe high standards of commercial honor and just and equitable principles of trade." FINRA Rule 2010. As the D.C. Circuit has emphasized, "[t]he high ethical standards enforced by Rule 2010 are vital because customers and firms must be able to trust securities professionals with their money." *Saad*, 873 F.3d at 299. A preliminary injunction would prevent FINRA from enforcing Rule 2010 and its other SEC-approved rules against Plaintiff, delay potential "restitution to impacted customers," and leave Plaintiff free to continue to recommend unsuitable investments to vulnerable investors. D.E. 17-2, at 24.

More broadly, additional "copy-cat suits would inevitably follow" an injunction and also potentially foment litigation against dozens of other self-regulatory organizations structured similarly to FINRA. *Kim*, 698 F. Supp. 3d at 170. Faced with serial lawsuits and injunction requests, the critical enforcement functions of FINRA and other self-regulatory organizations could grind

26

to a halt, paralyzing the first-line regulators on which investors depend for protection and imposing an impossible regulatory burden on the SEC, which lacks the resources to fill the breach.  *See* SEC Concept Release, 69 Fed. Reg. at 71,267 (recognizing that "'the resources necessary for the Commission to assume [self-regulatory organization] regulatory functions directly and effectively are not realistically attainable'").

Accordingly, even if the Court assumes that Plaintiff has shown a likelihood of success on the merits and irreparable harm, the balance of the equities and the public interest independently "render preliminary relief inappropriate." *Kim*, 698 F. Supp. 3d at 173.

## V.    CONCLUSION

The Court should deny Plaintiff's Motion for a Preliminary Injunction.


Dated: July 29, 2024

Respectfully submitted,

 */s/ Melanie L. Katsur*
Melanie L. Katsur, PA Attorney I.D. 88458
Amir C. Tayrani (*pro hac vice*)
Alex Gesch (*pro hac vice*)
Max E. Schulman (*pro hac vice*)
Amalia Reiss (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
T: (202) 887-3636
F: (202) 530-9658
MKatsur@gibsondunn.com
ATayrani@gibsondunn.com
AGesch@gibsondunn.com
MSchulman@gibsondunn.com
AReiss@gibsondunn.com

*Attorneys for Defendant Financial Industry Regulatory Authority, Inc.*

27

**CERTIFICATE OF COMPLIANCE**

This brief complies with the word limitations in Section 9 of the Court's Policies and Procedures – General Guidance and Civil Matters, because the brief contains 8,577 words, as determined by the word-count function of Microsoft Word 2019.


Dated:  July 29, 2024                    Respectfully submitted,

                                         */s/ Melanie L. Katsur*
                                         Melanie L. Katsur
                                         GIBSON, DUNN & CRUTCHER LLP
                                         1050 Connecticut Avenue, N.W.
                                         Washington, D.C.  20036
                                         (202) 887-3636
                                         MKatsur@gibsondunn.com