**UNTIED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| D. ALLEN BLANKENSHIP,<br><br>        *Plaintiff,*<br>   v.<br><br>FINANCIAL INDUSTRY REGULATORY<br>AUTHORITY,<br><br>        *Defendant.* | Civil Action No. 2:24-cv-3003<br><br>Honorable John F. Murphy |

**PLAINTIFF'S REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**

**Table of Contents**

I.     INTRODUCTION ..................................................................................................1

II.    THE PENALTIES SOUGHT MAKE THE CLAIM LEGAL IN NATURE ..............................................1

III.   SUITABILITY AND COMMON LAW FRAUD, A DISTINCTION WITHOUT A DIFFERENCE. .........3

   a.   Scienter. ..................................................................................................................3

   b.   Congress cannot conjure away the Seventh Amendment. ...........................................4

IV.    Congressional Intent ................................................................................................5

   c.   Futility of exhausting administrative remedies. ............................................7

   d.   Irreparable Harm .................................................................................................9

## I.    INTRODUCTION

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C.A. § 1331. In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall otherwise be re-examined in any Court of the United States, than according to the rules of the common law. U.S. Const. amend. VII. In fact, the right to a jury trial is so vitally important and is so deeply embedded in American history and jurisprudence that any attempts to curtail Seventh Amendment rights are always "scrutinized with the utmost care." *Securities and Exchange Commission v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024). The importance of the Seventh Amendment is shown in its breadth because the United States Supreme Court has proclaimed that the right to jury trial in civil cases extends beyond "common-law forms of action recognized" at the time the Amendment was ratified. *Jarkesy*, 144 S. Ct. at 2128 (citing *Curtis v. Loether*, 415 U.S. 189, 193 (1974). It is true that the Seventh Amendment extends to cases that are only "legal in nature." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989). Here, just as in *Jarkesy*, the remedy sought by FINRA provides the answer to whether this case is legal in nature.

## II.    THE PENALTIES SOUGHT MAKE THE CLAIM LEGAL IN NATURE

Money damages are the prototypical common law remedy. *Jarkesy*, 144 S. Ct. at 2129 (citing *Mertens v. Hewitt Associates*, 508 U.S. 248, 602, 610 (1993). Moreover, money damages are legal in nature if it is designed to punish or deter the wrongdoer, rather than restore the status quo, and a civil sanction can only serve either retributive or deterrent purposes. *Jarkesy*, 144 S. Ct. at 2129. As such, "a civil sanction cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as serving either a retributive or deterrent purpose, is punishment. *Id.,*

(quoting *Austin v. United* States, 509 U.S. 602, 610 (1993). Just as in *Jarkesy*, here the retributive and deterrent nature of the civil penalties sought by FINRA are a type of remedy at common law that could only be enforced by courts of law. *Jarkesy*, 144 S. Ct. at 2129.

Altogether, the civil penalties at issue here are a two-year suspension from associating with any FINRA member firm, a fine of $20,000, and disgorgement of $43,032.36 from his alleged violative conduct.[1] Doc. 18-2, at 47-50 (FINRA's Pre-Hearing Brief, at 24-27). Individually, the civil penalties stem from FINRA's sanction guidelines. First, FINRA asks that the Hearing Panel impose sanctions for unsuitable Class A mutual fund recommendations of an eighteen-month suspension, a $10,000 fine, and full disgorgement of $43,032.36. *Id.* at 47 (PHB, at 24). Second, FINRA asks that the Hearing Panel impose sanctions for unsuitable transactions to evade firm supervisory procedures, a suspension of six-months and a fine of $5,000. *Id.* at 48-19 (PHB at 25-26). Third, FINRA asks that the Hearing Panel impose sanctions for mismarking order tickets, a suspension of six months and a $5,000 fine. *Id.* at 49-50 (PHB at 26-27).

By at least two metrics, the relief sought by FINRA is more severe than that which was levied by the SEC in *Jarkesy.* In the immediate matter, FINRA seeks a fine equal to 125% of the gross commissions received by Blankenship as a result of the alleged misconduct ($16,014.16), and disgorgement of 269%. Doc. 20-3, at 9; Doc. 20-1, at 2. In *Jarkesy*, the SEC sought a civil penalty equal to 44%, and disgorgement equal to 100% of Patriot28's profit. *Jarkesy*, 144 S. Ct. at 2156. Although the proportional balance favors *Jarkesy* when comparing the monetary sanctions and disgorgements of the two cases, the prohibition from participating in the securities industry

---

[1] It is important to note that the disgorgement amount vastly exceeds the gross amount received by Blankenship in connection with his alleged misconduct ($16,014.16, according to Doc. 20-3, at 9). The aforementioned distinction shows a punitive component because Blankenship would be required to pay more than what he received—go[ing] beyond restoring the status quo" and so are legal in nature" *Jarkesy*, 144 S. Ct., at 2122 citing *Tull v. United States*, 481 U.S. 412, 422 (1987).

appears to favor Blankenship—but only if one ignores that Blankenship's chances of affiliating with a member firm to reenter the industry post-prohibition are miniscule at best.[2] *Jarkesy*, 144 S. Ct. at 2127. Here, FINRA seeks to prohibit Blankenship from participating in the securities industry for two years. Doc. 18-2, at 50 (PHB at 27). Because FINRA is asking for fines, disgorgement, and prohibition from participation in the securities industry, the relief sought by FINRA is substantially the same as that sought by the SEC in *Jarkesy*.

### III.    SUITABILITY AND COMMON LAW FRAUD, A DISTINCTION WITHOUT A DIFFERENCE.

#### a.    Scienter.

Defendant seeks to distinguish allegations of suitability violations from common law fraud by focusing on the absence of a requirement of scienter in the former. Although such distinction goes beyond what is needed under *Jarkesy* (holding that, "all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *Id.* at 2128, quoting *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 447 (1830)) for a claim to "sound in common law," their argument fails due to FINRA imputing scienter to all that wish to "engage[ ] in the investment banking or securities business of a member[.]" FINRA Rule 1210.[3] As noted by Defendant, "**FINRA** . . . **associated persons** registered with FINRA affirmatively **agree** . . . **to abide by its rules**." Uniform Application for Securities Industry Registration or Transfer (Form U-4), Section 15A ¶ 2, bit.ly/3LyqqpO (*emphasis added*); see Doc. 20, § 2; In addition, Defendant

---

[2] See FINRA Rule 4111(i)(4)(A)(iv). Imposing restrictions upon member firms that register associated persons with, *inter alia*, "a final regulatory action that resulted in a . . . sanction or order, and was brought by . . . a self-regulatory organization[.]"[.]"; See also FINRA Rule 1017(a)(7) (imposing additional constraints on firms seeking to hire brokers with, e.g., "regulatory sanctions involving fines of $15,000 or more or a bar from the brokerage industry." – adopted by FINRA in 2021).

[3] Exemptions to registration with FINRA under Rule 1230 are allowed for purely ministerial staff or those whose functions are related solely and exclusively (1) trading on the floor of an exchange, (2) transactions in municipal securities, (3) transactions in commodities, or (4) transactions in futures—if the person is registered with a futures association.

imposes upon its members (a/k/a *associated persons* and *Registered Representatives*)[4] requirements to complete continuing education ("CE") aimed at, in part, understanding suitability. See, CE S101, at A3, https://tinyurl.com/4p6ukbar; FINRA Rule 1210 SM .07 (requiring all registered representatives to satisfy the Rule 1240 continuing education regulatory element). At both the member firm and associated person levels, repeated certifications and attestations are executed. Defendant requires member firms to certify, *inter alia*, their compliance with its rules each year,[5] and member firms, in-turn, require their associated persons to certify knowledge, understanding, and awareness of, and compliance with all FINRA rules through the use of annual compliance questionnaires. Put another way, although scienter is not an element of proving a violation of a suitability requirements, scienter is constructively imputed to all associated persons due to the overwhelming practices and procedures designed to ensure that all member firms and associated persons are acutely aware of suitability requirements, and that they hold one another accountable through requiring constant attestation of the same.

  **b.  Congress cannot conjure away the Seventh Amendment.**

  Congress has incorporated prohibitions from common law fraud into federal securities law, and the SEC has followed suit in rulemaking, so much so that an enduring link between federal securities fraud and its common law "ancestor" is evident. *Jarkesy*, 144 S. Ct. at 2130 (citing *Foster v. Wilson*, 504 F.3d 1046, 1050 (CA9 2007). Additionally, suitability causes of action by FINRA and common law fraud (1) share identical ancestry as the Section 10(b),[6] enforced by the

---

[4] Defendant uses both phrases among its rules and communications to refer to associated persons.
[5] FINRA Rule 3130. Annual Certification of Compliance and Supervisory Processes.
[6] 15 U.S.C. § 78j

SEC under Rule 10b-5, and (2) are so closely related that they are indistinguishable for all relevant purposes— "both target the same basic conduct: misrepresenting or concealing material facts."[7]

There are traditionally five elements of common law fraud: 1) misrepresentation of material fact; 2) scienter; 3) intent to induce action; 4) justifiable reliance; and 5) damage to the party justifiably relying on misrepresentation of material fact.[8] The elements of a securities fraud claim under Section 10(b) include six nearly identical elements: 1) that the defendant made a misrepresentation or omission; 2) of a material; 3) fact; 4) that the defendant acted with knowledge or recklessness; 5) that the plaintiff reasonably relied on the misrepresentation or omission; and 6) consequently suffered damages.[9] The elements of common law fraud are substantially the same elements of a securities fraud prosecution brought under Rule 10b-5, which includes a claim for unsuitable sales practices.

## IV.    Congressional Intent

Defendant asserts that "this Court lacks jurisdiction" because Blankenship is required, "by statute,"[10] to utilize the process proscribed in Doc. 20, at 5-6. However, Defendant fails to acknowledge several realities. First, "[p]rovisions for agency review do not restrict judicial review unless the statutory scheme displays a fairly discernible intent to limit jurisdiction, and the claims at issue are of the type Congress intended to be reviewed within the statutory structure."[11] Not only does no discernible intent to limit jurisdiction exist in the immediate matter, but 15 U.S.C.

---

[7] *Jarkesy*, 144 S. Ct. at 2130; *Compare Barnard v. Verizon Commc'ns, Inc*., 451 F. App'x 80, 85(3d Cir. 2011) (citing *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 225 n. 13 (3d Cir. 2008), *with* FINRA Rules 2111.

[8] *Barnard v. Verizon Commc'ns, Inc*., 451 F. App'x 80, 85(3d Cir. 2011) (citing *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 225 n. 13 (3d Cir. 2008).

[9] *In re Westinghouse Securities Litigation*, 90 F.3d 696, 710 (3d Cir. 1996).

[10] Although Defendant does not initially cite to any statute in regard to this argument, 15 U.S.C. § 78a(1) is presumable the statute upon which this assertion relies.

[11] *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212, 114 S. Ct. 771, 779 (1994) (*internal quotation marks omitted*).

§78bb(2) provides that "the rights and remedies provided by [the Exchange Act] shall be *in addition to any and all other rights and remedies* that may exist at law or in equity."[12]  Blankenship asserts his claims under constitutional rights—the very same "rights and remedies that [ ] exist[ed] at law or in equity" when the Exchange Act became law (1934), and when it was amended (1975). Accordingly, the Supreme Court has distinguished that 15 U.S.C. §78y does not operate as Defendant suggests.  Rather, "Congress does not intend to limit jurisdiction if a finding of preclusion could foreclose all meaningful judicial review, if the suit is wholly collateral to a statute's review provisions, and if the claims are outside the agency's expertise."[13]

Secondly, the close relationship between FINRA and the SEC necessarily brings about the conclusion that FINRA rules are federal law, especially considering the 1975 Amendments to the Exchange Act with respect to the rulemaking process. The legislative history of the 1975 Amendments to the Exchange Act make clear that "[t]he self-regulatory organizations, it should be emphasized, are *intended to be subject to the SEC's control and have no governmentally derived authority to act independently of SEC oversight*."[14] Given that FINRA has no governmentally derived authority to act independently of SEC oversight, then FINRA's enforcement proceedings are not independent of the SEC and FINRA's enforcement proceedings are a violation of the Seventh Amendment just as the SEC's were deemed to be in *Jarkesy*.

Third, it is critical to note that FINRA must file, in accordance with SEC rules, any proposed rule, rule change, or rule deletion with the SEC for approval. 15 U.S.C. § 78s(b). Additionally, any proposed rule, rule change, or rule deletion must be accompanied by a concise statement of the basis of the proposed rule, rule change, or rule deletion. *Id*. And, following a notice

---

[12] *Id. (emphasis added).*
[13] *Id.*
[14] H.R. Rep. No. 93-1476, at 45 (1974).

and comment period, FINRA rules may become law only if the rules are approved by the SEC. *Id.* Importantly, the SEC may create rules for FINRA without FINRA influence whatsoever. *Id.*, § 78s(c). Which further demonstrates that FINRA is but an arm of the SEC.

**V.      Reach of Blankenship's claim.**

Blankenship's Seventh Amendment claim is not a claim challenging nuanced procedures used by FINRA to adjudicate claims brought by FINRA in FINRA's in-house fourm. Rather, it is unequivocally more than a mere "challenge to the particular procedures that FINRA will use to adjudicate his individual disciplinary proceeding[.]" Doc. 20, at 1. Blankenship's claim is akin to that addressed in *Axon*, it is precisely a "far-reaching constitutional claim[ ]" challenging FINRA's authority.[15] More pointedly, Plaintiff requests that this Court "enjoin [FINRA] from subjecting it to [FINRA's] unfair and unconstitutional internal forum" on grounds that such adjudication is unconstitutional. *Axon Enter. v. FTC*, 598 U.S. 175, 183, 143 S. Ct. 890, 899 (2023) (*internal quotation marks omitted*).

      **c.      Futility of exhausting administrative remedies.**

Even when the exhaustion doctrine would normally apply, extraordinary circumstances, nevertheless, may compel a court to hear a case. *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979) (citing *McKart v. United States*, 395 U.S. 185, 192-201 (1969). Where an immediate appeal is necessary to give realistic protection to the claimed right . . . a court may properly carve an exception to the doctrine. *Id.* There are two situations where the Third Circuit will deviate from the exhaustion requirement: 1) when the administrative procedure is clearly shown to be inadequate to prevent irreparable injury; or 2) where there is a clear and unambiguous statutory or constitutional violation. *Id.* In the immediate matter, Defendant seeks to adjudicate a

---

[15] It is of note that Defendant used "governmental body[ ]" when referring to itself despite the complete absence of any such description in the *Axon* decision cited by Defendant.

claim derived from common law fraud. It seeks monetary relief, the "more important" consideration (*Jarkesy*, 144 S. Ct. at 2129), greater than the amount received by Blankenship— making the monetary relief punitive as discussed *supra*.

Defendant submits that this Court lacks jurisdiction because Blankenship must follow the proscribed path to the U.S. Court of Appeals. Doc. 20, at 1. In support of its position, Defendant relies upon *Kim v. FINRA*, 698 F. Supp. 3d 147 (D.D.C. 2023), a case in which the district court did not contemplate the holding of *Jarkesy* because *Kim* was decided prior to *Jarkesy*. In the absence of *Jarkesy*, the *Kim* Court properly surmised the potential for "litigation against dozens of other self-regulatory organizations" stemming from a decision adverse to FINRA. *Kim*, 698 F. Supp. 3d at 170. However, in the aftermath of *Jarkesy*, it is simply a matter of time until *Kim* is cautioned against for its statement that "no court has ever held that FINRA or its relationship with the SEC is unconstitutional." *Id.*, at 153.

As Defendant aptly points out, "FINRA is currently the only registered national securities organization [that] exercises self-regulatory authority over its member firms [ ] and their associated persons employed as securities brokers." Doc. 20 at 4 citing 15 U.S.C. § 78o-3(b)(4). However, Defendant fails to reconcile its status as "the only" such association with the litany of references to multiple registered securities associations and multiple self-regulatory organizations. *Id.* § 78s(b) (referencing, "[e]ach self-regulatory organization"); *Id.* § 78d(a) (referencing the Senate Committee on Financial Services of the House of Representatives report including "an evaluation of the oversight by the [SEC] of national securities *associations* registered under section 78o-3[.]" *emphasis added*); *Id.* at (1-11) (reference, in eleven instances, "national securities *associations*").

By crediting its origins to a "trade group founded in 1912," Defendant agrees that it is a trade group that came into existence prior to the Maloney Act (1938). Doc. 20 at 4. Given that the Malone Act authorized the formation and registration of national securities associations, FINRA's

purported predecessor, NASD, began as a trade association. Since all other trade associations in the space merged into FINRA, Congress' intent that securities associations benefit from competition among one another, has been replaced by a barrier to entry into a private industry. Whereby, someone entering a private industry is now required to join a non-governmental trade group. This does not reflect the intent of Congress as depicted in the Exchange Act, nor the 1975 amendments to it.

### d.      Irreparable Harm

Without preliminary injunction, Blankenship will be irreparably harmed because his Seventh Amendment right to a trial by jury in this civil case will be violated. Foundationally, an alleged deprivation of a constitutional right requires no further showing of irreparable harm.[16] Accordingly, a violation of a right that is "justly dear to the American people . . . , [that] has always been an object of deep interest and solicitude . . . , [that] has been incorporated into *every* state constitution in the union [at the time of this ruling]" and that was proposed as an Amendment as soon as the United States Constitution was adopted is undoubtedly a fundamental right.[17] As such, a loss of Seventh Amendment freedoms, which even for minimal period of time, unquestionably constitutes irreparable injury.[18]

---

[16] *See Forum for Academic and Institutional Rights v. Rumsfeld*, 390 F.3d 219, 246, 193 Ed. Law Rep. 657, 5 A.L.R. Fed. 2d 765 (3d Cir. 2004), *rev'd and remanded on other grounds*, 547 U.S. 47, 126 S. Ct. 1297, 164 L. Ed. 2d 156, 206 Ed. Law Rep. 819 (2006) (stating that if a party moving for a preliminary injunction based on alleged violations of the First Amendment establishes a likelihood of success on the merits of its First Amendment claim, then the party has also "necessarily satisfied" the element of irreparable harm because "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury")

[17] *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 446 (1830).

[18] *Cf.* Roman Cath. Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 141 S. Ct. 63, 208 L. Ed. 2d 206 (2020) *citing* Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion) (explaining that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable harm").

Additionally, as demonstrated by the attached Affidavit (Exhibit A) Plaintiff has suffered irreparable harm as a financial professional for a multitude of reasons. Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will.[19] Plaintiff has been given a thirty-day notice of termination by his broker-dealer because of the negative reputational consequences of FINRA enforcement's fishing expedition to find wrongdoing. FINRA's enforcement procedures have caused such a loss of control of reputation that Blankenship was fired before the enforcement proceedings began because of the well-known success rate in a system where FINRA creates the rules, enforces the rules, prosecutes alleged violations of the rules, and judges whether an individual has violated rules.[20] Moreover, a suspension of two years will cause Plaintiff to undoubtedly lose trade because he will be barred from providing financial services to customers, and it is nearly certain that no other broker-dealer will hire him after he has served his suspension—Plaintiff will likely never be able to work in the securities industry again. Also, without a broker-dealer, Plaintiff is not able to conduct securities-related business and will suffer a loss of trade. The loss of control of reputation and the loss of trade will irreparably harm Plaintiff.

In sum, Plaintiff respectfully requests that this Honorable Court grant Plaintiff the relief requested in the petition.

---

[19] *Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*, 143 F.3d 800, 806 (3d Cir. 1998) (stating that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill") (*citing Opticians Ass'n of Am. v. Independent Opticians of Am.,* 920 F.2d 187, 197 (3d Cir.1990)).

[20] *Cf.* The Federalist No. 10 (James Madison) (explaining that "[n]o man is allowed to be a judge in his own cause, because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity. With equal, nay, greater reason, a body of men are unfit to be both judges and parties at the same time").

Respectfully submitted this 5th day of August, 2024.


By:  */s/ John P. Quinn*

John P. Quinn, Esq. (Pa. Bar No. 85239)
Quinn Law Partners, LLC
Radnor Financial Center
150 N. Radnor Chester Road, Suite F200
Radnor, PA 19087
Telephone: (484) 354-8080
Email: jpquinn@quinnlp.com

Dochtor D. Kennedy, MBA, J.D. (Co. Bar No. 45851)
HLBS Law
390 Interlocken Crescent, Suite 350
Broomfield, CO 80021
Telephone: (720) 282-5154
Facsimile: (720) 340-5022
Email: doc.kennedy@hlbslaw.com