## UNTIED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

D. ALLEN BLANKENSHIP,

        *Plaintiff,*

   v.

FINANCIAL INDUSTRY REGULATORY
AUTHORITY,

        *Defendant.*

Civil Action No. 2:24-cv-3003

### DECLARATION OF D. ALLEN BLANKENSHIP

I, D. Allen Blankenship, declare as follows:

1. Throughout the first two decades of my career as a financial professional, my earning capacity steadily grew year-over-year. I completely dedicated myself to building solid customer relationships based on trust, consistent positive performance, and by prioritizing personal and professional integrity.

2. My earning capacity reflected my efforts and customer-centric commitment and was approximately $250,000 on a twelve-month trailing basis until around November 2019.

3. FINRA began investigation me in 2019 after I was terminated by my former employer, Independent Financial Group, LLC ("IFG"), and after IFG filed a Uniform Termination Notice of Securities Resgistration ("Form U5").

4. Prior to FINRA's investigation I serviced approximately 135 clients but lost many clients after FINRA began its investigation and now have around 76 clients.

5. Upon the FINRA Department of Enforcement initiating a formal inquiry into me, based upon allegations made by my prior member firm, I immediately began to suffer reputational harm. Prospective employers were apprehensive about allowing me to affiliate with them solely because of the open inquiry.

6. I spent approximately six months searching for a FINRA member firm that would allow me affiliate with it. Many times, a potential member firm would not associate with me solely because of FINRA's investigation. Even after becoming affiliated, I was subject to heightened supervision by the firm as a precautionary measure.

7. I have had many issues with obtaining and maintaining state securities licenses. Specifically, in the States of Ohio, Delaware, Maryland, and New Jersey. I have been unable to maintain licenses in Ohio, Delaware, and Maryland causing me to be unable to service my clients who reside in each of those respective states. Accordingly, I am unable to be remunerated for my clients in Ohio, Delaware, and Maryland. Also, I have experienced significant delays and costs in maintaining a securities license in New Jersey.

8. Because of the reputational harm, I have lost clients – the base for my referral centric business plan. The loss of clients has cost me approximately $125,000 per year in earnings, with an unknowable, unquantifiable amount loss from potential referral business that I regularly received before FINRA's investigation.

9. The loss of clients has caused my assets under management to decline greatly, from which I draw 1% to 1.5% of earnings from which has caused me to lose millions of dollars in earnings and will continue to cause me to lose millions of dollars in earnings.

10. Further irreparable damage has been done to my reputation due to several articles and blog posts about me that have worked to promulgate FINRA's yet-to-be-proven allegations.

Including, an allegation that I engaged in unauthorized discretion, that was eventually expunged. However, even after the allegation of unauthorized use of discretion was expunged, FINRA's Department of Enforcement included the allegation of unauthorized discretion in its preliminary determination to recommend disciplinary action against me.

11. In December of 2023, FINRA initiated formal disciplinary proceedings against me, alleging violations of FINRA Rules 2011, 2010, and 4511.

12. After filing this complaint in the Federal District Court for the Eastern District of Pennsylvania I was given a choice between rescinding my complaint against FINRA and returning to heightened supervision or a thirty-day notice of termination by, Alex McKenzie, the Principal of San Blas Securities, LLC and SB Advisory, LLC (collectively "San Blas"). Concerning termination, I was told by San Blas's Principal that "you can't go up against FINRA" and that the broker-dealer "didn't sign up for unwarranted attention from the regulator." I am less than two-weeks away from San Blas's termination of my affiliation.

13. When I am terminated from San Blas I will be subjected to further irreparable harm. More of my clients, who I will be unable to recoup, will sever our relationship, and I will face extreme difficulty in finding another broker-dealer willing to associate with me because of yet another termination disclosure and diminished earnings capacity.

14. If FINRA is allowed to continue its enforcement proceedings, it is likely that I will be barred from the securities industry for two years, all clients will terminate our relationships, I will be forced to re-take all licensure exams, and potential employer broker-dealers will be unwilling to associate with me because of my lack of production and clients due to the ramifications of a two-year suspension. I will be effectively blacklisted from the securities industry for the rest of my life.

15. All told, between the terminations, and defending myself against seemingly endless, redundant, and increasingly broad FINRA investigations and enforcement proceedings I have become nearly financially destitute. This has caused tremendous strain on my otherwise happy marriage. My wife and I have spent all the funds in our investment and savings accounts, our IRA accounts have been drained to nearly $0, we are delinquent on many of our financial obligations, and we now live paycheck-to-paycheck.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on: August 5, 2024

D. Allen Blankenship