**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **D. ALLEN BLANKENSHIP** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.   24-3003** |
| | : | |
| **FINANCIAL INDUSTRY** | : | |
| **REGULATORY AUTHORITY** | : | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                                          **September 4, 2024**

A broker named D. Allen Blankenship asks us to enjoin FINRA from proceeding with a disciplinary hearing against him.  DI 19.  Mr. Blankenship relies on the Supreme Court's recent decision in *Jarkesy*, which held that when the SEC seeks civil penalties such as monetary damages for securities fraud, the Seventh Amendment guarantees the defendant a jury trial.  *SEC v. Jarkesy*, 144 S.Ct. 2117 (2024).  Mr. Blankenship argues that by extension, FINRA's proceedings seeking civil penalties against him also run afoul of the Seventh Amendment.

FINRA advances two seemingly incongruous positions against Mr. Blankenship's motion.  FINRA first argues that we lack subject matter jurisdiction under the *Thunder Basin*, which governs when a constitutional challenge to an administrative enforcement action may be brought collaterally in a district court.  *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994).  At the same time, FINRA also argues that its tribunals do not implicate the Seventh Amendment because it is a self-regulatory organization (SRO) formed as a corporation under Delaware law and therefore not a part of the government.  Notwithstanding the tension there, we find that because FINRA's adjudicative proceedings are subject to review by the SEC under a special statutory scheme described in the Securities Exchange Act, these FINRA proceedings are subject to the Supreme Court's holdings

in *Axon* and *Thunder Basin*. *See* 15 U.S.C. § 78s(b)-(e), 78y(a)-(b); *cf. Scottsdale Cap. Advisors Corp. v. FINRA*, 811 F. App'x 667, 668 (D.C. Cir. 2020) (per curiam) (finding that it was proper for the district court to apply the *Thunder Basin* factors to a claim that FINRA breached its membership agreement by not following its own bylaws because it was fundamentally a "challenge[] to FINRA's regulatory and disciplinary actions").

After review of Mr. Blankenship's claims and the *Thunder Basin* factors, we find that we lack jurisdiction to hear Mr. Blankenship's Seventh Amendment challenge to FINRA's proceedings. Accordingly, we will dismiss Mr. Blankenship's claims for lack of subject matter jurisdiction. We need not reach the merits of the preliminary injunction motion, including whether FINRA is a government actor and whether its tribunals may levy certain penalties without a jury.

## I.    **Background**

According to Mr. Blankenship, FINRA has been investigating Mr. Blankenship's actions as an employee of Independent Financial Group, LLC since at least 2019. DI 18 at 2. On December 7, 2023, FINRA filed a formal disciplinary complaint against Mr. Blankenship, alleging violations of FINRA Rules 2010, 2111, and 4511. *Id.* at 3. Mr. Blankenship argues that the claims against him in the Office of Hearing Officers (OHO) are analogous to common law fraud claims, and that he is subject to civil penalties, including fines beyond those that would restore the status quo. *Id.* at 5-8. Mr. Blankenship argues that under *Jarkesy*, the OHO proceedings violate the Seventh Amendment, and he is entitled to jury trial.[1]

---

[1] Mr. Blankenship alludes to "an unconstitutionally structured adjudicator" in his complaint and references Article II power in his briefing, but his complaint does not state a clear

Mr. Blankenship filed this action asking for declaratory relief that the OHO proceedings violate his Seventh Amendment rights and seeking a permanent injunction five days before his scheduled disciplinary hearing. *Id.* at 9-10. Following the complaint, the parties agreed that Mr. Blankenship would file an amended complaint and amended motion for preliminary injunction and FINRA would postpone its hearing until after our resolution of the preliminary injunction motion. The motion has been fully briefed and oral argument was held on August 21, 2024. *See* DI 20; DI 21; DI 22.

## II.   <u>Legal Standard</u>

The Supreme Court recently explained the subject matter jurisdiction requirements for collaterally attacking an administrative enforcement action. *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023). Special statutory review schemes divest district courts of their jurisdiction over certain challenges to agency action. As the Supreme Court instructed, an analysis of whether a statutory review scheme supersedes our jurisdiction is guided by the three *Thunder Basin* factors. "First, could precluding district court jurisdiction 'foreclose all meaningful judicial review' of the claim? . . . Next, is the claim 'wholly collateral to [the] statute's review provisions'? . . . And last, is the claim 'outside the agency's expertise'?" *Axon*, 598 U.S. at 186 (quoting *Thunder Basin*, 510 U.S. at 212-13). Answers of "yes" tend to support

---

basis for such a challenge. DI 18 at 10; DI 19-1 at 3, 16-17. Mr. Blankenship's briefing focuses almost exclusively on the consequences of *Jarkesy*. *See* DI 19-1 at 17 ("[T]he tide has clearly changed for Defendant in a post-*Jarkesy* world."). At oral argument, when asked whether the claims relate to the Seventh Amendment or Article II, Mr. Blankenship confirmed that the claims were based on the Seventh Amendment only. DI 23 (oral argument audio recording) at 39:19-42. That is, therefore, the basis of our decision.

district court jurisdiction.[2]

### III.  **Analysis**

Here, the three *Thunder Basin* factors indicate that we lack subject-matter jurisdiction

over Mr. Blankenship's claims.

The first factor is most significant here.  Critically, denial of district court jurisdiction

will not foreclose Mr. Blankenship's ability to obtain meaningful judicial review.  Should Mr.

Blankenship not prevail before the OHO, he may appeal the OHO decision to FINRA's National

Adjudicatory Counsel.  FINRA Rule 1015(a).  If that decision were adverse, he could then

request review by the SEC and obtain an automatic stay of the proceeding.[3]  FINRA Rule

9370(a); 17 C.F.R. § 201.401(d).  And if he were dissatisfied with the final order of the SEC, he

could appeal that to "the United States Court of Appeals for the circuit in which [the appellant]

resides or has his principal place of business, or for the District of Columbia Circuit."  15 U.S.C.

78y(a)(1).  Therefore, even if we lack jurisdiction, Mr. Blankenship can obtain complete review

of his claims in an Article III court.  *Axon*, 598 U.S. at 190 ("Review of agency action in a court

of appeals can alone 'meaningfully address[ ]' a party's claims." (quoting *Thunder Basin*, 510

U.S. at 215))).

---

[2] We need not decide what happens when the factors point different ways because here, the factors point the same way.

[3] Mr. Blankenship points to the SEC review stage and argues that reviewing the FINRA decision would necessarily require the SEC to engage in the behavior prohibited by *Jarkesy*. Maybe so, but that probably depends on exactly what happens in the FINRA proceedings, the result of those proceedings, and how the SEC reviews them.  In any event, *Jarkesy* came up on direct review, not collateral attack.  In that sense, our decision here aligns with the procedural pathway taken in *Jarkesy*, where the Seventh Amendment claim was pursued on direct appeal from the SEC to the Fifth Circuit and then to the Supreme Court.

Another question under the first factor is whether the injury will be "meaningfully" addressed if Mr. Blankenship must navigate the arduous pathway we just outlined.  In *Axon*, the Supreme Court found that a claim that the FTC's internal proceedings were unconstitutional in their entirety was a "here-and-now injury" that cannot be meaningfully addressed after the proceedings have finished.  598 U.S. at 190-91.  The injury in *Axon* was "here-and-now" because it did not matter whether the party won or lost in the FTC proceedings — the injury arose from mere participation in the proceedings.  *Id.*  Hence, appellate review could not address the injury. The situation here is unlike that in *Axon*.  Mr. Blankenship's Seventh Amendment argument gets purchase only if FINRA is subject to the ruling in *Jarkesy* and the FINRA rules and penalties are sufficiently analogous to common law claims imposing civil penalties, as contemplated by *Jarkesy*.  Mr. Blankenship's injuries are not "here-and-now" because they do not arise merely from his appearance in FINRA's proceedings.[4]  FINRA will have to take certain allegedly unconstitutional steps to injure him.  FINRA could change its mind about how to proceed with Mr. Blankenship's case, or Mr. Blankenship could win.  Thus, a finding of no jurisdiction in this court will not foreclose all "meaningful" judicial review.

Turning to the second and third factors, Mr. Blankenship's Seventh Amendment claim is not wholly collateral to the Securities Exchange Act's review provisions and is not outside of the SEC's expertise.  Mr. Blankenship's Seventh Amendment claims rest on whether FINRA's relevant rules, guidance, and penalties, properly interpreted and construed, show that the claims asserted against Mr. Blankenship sufficiently resemble common law causes of actions with legal

---

[4] *Axon* suggests that if this case were a challenge to the very constitutionality of FINRA's structure, the result might be different.

remedies.  *Jarkesy*, 144 S. Ct. at 2120.  Thus, his claims are not wholly collateral because they do not challenge FINRA's existence, but instead depend on FINRA's proceedings and the interpretation of its rules.  *See Axon*, 598 U.S. at 192 (finding claims wholly collateral when "they are challenging the Commissions' power to proceed at all, rather than actions taken in the agency proceedings").  Further, the interpretation or application of FINRA rules is certainly within FINRA and the SEC's expertise, because they jointly make those rules.  *See Thunder Basin*, 510 U.S. at 201 ("The NLRA claims at root require interpretation of the parties' rights and duties under § 813(f) and 30 CFR pt. 40, and as such arise under the Act and fall squarely within the expertise of the Commission . . . .").

**IV.**   <u>**Conclusion**</u>

     Under *Thunder Basin* and *Axon*, we lack subject matter jurisdiction over Mr. Blankenship's collateral attack on his FINRA proceeding.  Mr. Blankenship will have to pursue his theory on direct appeal.  We therefore dismiss the case and do not reach the preliminary injunction question.