**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| D. ALLEN BLANKENSHIP | : | CIVIL ACTION |
| | : | |
| VS. | : | NO.: 2:24-cv-03003-JFM |
| | : | |
| FINANCIAL INDUSTRY REGULATORY | : | |
| AUTHORITY | : | |

## MOTION FOR TEMPORARY INJUNCTION PENDING APPEAL
## AND FOR TEMPORARY ADMINISTRATIVE RELIEF

Defendant D. Allen Blankenship hereby respectfully requests that the Court

grant temporary, emergency injunctive relief simply to preserve the *status quo*, and

not alter it, pending appellate review of this Court's dismissal of this action.

## INTRODUCTION

"[A] court retains the power to grant injunctive relief to a party to preserve

the status quo during the pendency of an appeal." *Hawaii Housing Authority v.

Midkiff*, 463 U.S. 1323 (1983); Fed. R. Civ. P. 62(d) (recognizing the district court's

inherent authority to order an injunction pending appeal). A request for temporary

injunction must ordinarily be sought in the district court, unless doing so is

impracticable. Fed. R. Civ. P. 8(a)(1). Yesterday, the Third Circuit denied a motion

filed under Appellate Rule 8, on the basis that Mr. Blankenship did not demonstrate

that it was impracticable to seek relief first from this Court. Mr. Blankenship now

does so.

The Court is familiar with this case.  Defendant D. Allen Blankenship is a stock broker who asserts that imminent disciplinary proceedings brought by—and to be adjudicated within—the Financial Industry Regulatory Authority ("FINRA") will cause the deprivation of his Seventh Amendment right to a jury trial before an Article III court.  In good faith, he asserts that this Court (and/or the Third Circuit in the currently pending appeal) should enjoin FINRA from "us[ing] in-house hearings to seek civil penalties [in] violat[ion of Mr. Blankenship's] Seventh Amendment right to a jury trial."  *SEC v. Jarkesy*, 603 U.S. ---, 144 S. Ct. 2117, 2139 (Jun. 27, 2024) (Gorsuch, J., concurring); *cf. Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, at *2 (D.C. Cir. Jul. 5, 2023) (Walker, J., concurring) ("FINRA's hearing officers are near carbon copies of th[e SEC's] ALJs.").

While that issue makes up the merits of this action, the Court did not rule on the merits but rather dismissed the case for lack of subject matter jurisdiction.  *See* Order (9/4/24), ECF No. 27.  Mr. Blankenship has exercised his right to seek appellate review of that decision.  Third Cir. Dkt. No. 24-2860; *cf. Deposit Guar. Nat. Bank v. Roper*, 445 U.S. 326, 333 (1980) ("Congress has vested appellate jurisdiction in the courts of appeals for review of final decisions of the district courts. 28 U.S.C. § 1291.  Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom.").

Mr. Blankenship seeks a temporary injunction against FINRA's initiation or continuance of disciplinary proceedings pending merits review of Mr. Blankenship's

claim that to hold those proceedings would irreversibly trammel his rights. *See Jarkesy*, 144 S. Ct. at 2142 (Gorsuch, J., concurring) ("Mr. Jarkesy had the right to appeal to the Commission, but appeals to that politically accountable body (again, the same body that approved the charges) tend to go about as one might expect.").

A temporary injunction simply to preserve the *status quo* will preserve Mr. Blankenship's claim to his important Seventh Amendment right to a jury trial without prejudicing FINRA at all. *See Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923) ("One does not have to await the consumption of a threatened injury to obtain preventative relief. If the injury is certainly impending, that is enough.").

## I.    This motion is proper to obtain temporary relief.

Mr. Blankenship respectfully requests that the Court consider this motion for relief, despite its previous dismissal of this action on jurisdictional grounds. FINRA has already unequivocally indicated its intention to hold extrajudicial disciplinary proceedings despite the pendency of Mr. Blankenship's appeal. *See* FINRA Order Denying Respondent's Motion for Stay of Hearing (Oct. 23, 2024), attached hereto as Exhibit A ("At the [pre-hearing conference], I heard oral argument on Respondent's motion to stay the upcoming hearing in this proceeding until the United States Court of Appeals for the Third Circuit rules on Respondent's appeal of the decision by the Eastern District of Pennsylvania in *Blankenship v. Financial Industry Regulatory Authority* (Civil action no. 2:24-cv-03003-JFM). Prior to the

PHC, Respondent filed a brief in support of his requested stay and [the] Enforcement [Division of FINRA] filed a brief in opposition.  I issued an oral ruling at the PHC denying Respondent's motion and said that I would follow up with a brief order memorializing that ruling. Being fully advised in the matter, and for the reasons discussed at the PHC, I **DENY** Respondent's Motion for Stay of Hearing.").

The consequence of FINRA's disciplinary proceedings against Mr. Blankenship is a possible order barring him from engaging in any economically viable activity in his chosen profession.  Given the time pressure created by FINRA's decision to move forward with the disciplinary proceeding even while Mr. Blankenship seeks review in the ordinary course from the Third Circuit, temporary injunctive is fair and appropriate.  *Alpine Securities*, 2023 WL 4703307, at *1 (granting temporary injunctive relief against FINRA's proposed disciplinary proceeding against the plaintiff and ordering that "the Financial Industry Regulatory Authority be enjoined from continuing the expedited enforcement proceeding against Alpine Securities Corporation pending further order of the court"); *see also Boston Parent Coal. for Acad. Excellence Corp. v. Sch. Comm.*, 996 F.3d 37, 44 (1st Cir. 2021); *Kentucky v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020); *Gonzalez* ex rel. *Gonzalez v. Reno*, 2000 WL 381901, at *4 n.4 (11th Cir. Apr. 19, 2000).

## II.  The Court should temporarily enjoin FINRA's disciplinary proceeding pending resolution of Mr. Blankenship's appeal.

To qualify for a temporary injunction, pending review on appeal, of action by

FINRA that was permitted by the Court's dismissal of this action "legal principles have been distilled into consideration of four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted); *see also Conestoga Wood Specialties Corp. v. Dep't of Health & Hum. Servs.*, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013) (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)).

### A. Mr. Blankenship has a strong likelihood of success on the merits.

Mr. Blankenship is likely to succeed on appeal in demonstrating that the statutes authorizing FINRA's use of in-house hearings to seek civil penalties[1], and the accompanying exclusive review provisions[2] are void for the same reasons, and under the same analysis as *Jarkesy*.

The Court held, relying on *Thunder Basin*, that it "lack[s] jurisdiction to hear Mr. Blankenship's Seventh Amendment challenge to FINRA's proceedings."

---

[1] 15 U.S.C. § 78*o*-3(b)(7) ("An association of brokers and dealers [e.g., FINRA] shall not be registered as a national securities association unless the Commission determines that the rules of the association provide that . . . persons associated with its members shall be appropriately disciplined for violation of . . . the rules of the association, by fine, . . . censure, or other fitting sanction.").

[2] 15 U.S.C. § 78y(a)(1).

Memorandum (ECF No. 26), p. 2.  In doing so, the Court relied upon the Securities

Exchange Act (hereafter, "SEA") in stating that Mr. Blankenship must proceed

through two separate levels within FINRA, then, if dissatisfied, appeal to the SEC,

and if still dissatisfied "could appeal [a final order of the SEC] to 'the United States

Court of Appeals for the [C]ircuit in which [he] resides or his principal place of

business, or for the District of Columbia Circuit.' Therefore, even if we lack

jurisdiction, Mr. Blankenship can obtain complete review of his claims in an Article

III court." Memorandum (ECF No. 26), p. 4 (citations omitted).  This framing is

indistinguishable from *Axon Enterprise, Inc. v. Federal Trade Commission*, where a

similar appeal-after-deprivation scheme was rejected:

> The harm Axon and Cochran allege is "being subjected"
> to "unconstitutional agency authority"—a "proceeding by
> an unaccountable ALJ." That harm may sound a bit
> abstract; but this Court has made clear that it is "a here-
> and-now injury." *Seila Law LLC v. Consumer Financial
> Protection Bureau*, 591 U. S. ---, 140 S.Ct. 2183, 2196,
> 207 L.Ed.2d 494 (2020) (internal quotation marks
> omitted). And—here is the rub—it is impossible to remedy
> once the proceeding is over, which is when appellate
> review kicks in. Suppose a court of appeals agrees with
> Axon, on review of an adverse FTC decision, that ALJ-led
> proceedings violate the separation of powers. The court
> could of course vacate the FTC's order. But Axon's
> separation-of-powers claim is not about that order; indeed,
> Axon would have the same claim had it won before the
> agency. The claim, again, is about subjection to an
> illegitimate proceeding, led by an illegitimate
> decisionmaker. And as to that grievance, the court of
> appeals can do nothing: A proceeding that has already
> happened cannot be undone. Judicial review of Axon's

(and Cochran's) structural constitutional claims would come too late to be meaningful.

The limits of that conclusion are important to emphasize. The Government, in disputing our position, notes that many review schemes—involving not only agency action but also civil and criminal litigation— require parties to wait before appealing, even when doing so subjects them to "significant burdens." That is true, and will remain so: Nothing we say today portends newfound enthusiasm for interlocutory review. Return, for example, to *Thunder Basin* and *Elgin*. There, the coal company and federal employee could both have argued that the statutory review process would subject them to greater litigation costs than their preferred suit in district court. But that would not have mattered. We have made clear, just as the Government says, that "the expense and disruption" of "protracted adjudicatory proceedings" on a claim do not justify immediate review. *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980); see, *e.g.*, *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). What makes the difference here is the nature of the claims and accompanying harms that the parties are asserting. Again, Axon and Cochran protest the "here-and-now" injury of subjection to an unconstitutionally structured deci- sionmaking process. See *supra*, at 903 – 904. And more, subjection to that process irrespective of its outcome, or of other decisions made within it. A nearer analogy than any the Government offers is to our established immunity doctrines. There, we have identified certain rights "not to stand trial" or face other legal processes. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). And we have recognized that those rights are "effectively lost" if review is deferred until after trial. Ibid. So too here, Axon and Cochran will lose their rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the proceedings are over.

*Axon Enter., Inc. v. Federal Trade Comm'n*, 598 U.S. 175, 191–192 (2023).

Mr. Blankenship respectfully submits that when relying upon *Thunder Basin*, the Court failed to recognize that Congress' assignment of Mr. Blankenship's disciplinary matter to adjudication in a non-Article III tribunal was improper. *Thunder Basin* involved a pre-enforcement challenge to a new statutory scheme governing the operation of mines, in particular asserting that the scheme gave "the union organizing advantages in terms of access [and] personal contact." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 204–205 (1994). The action was filed in a district court, contrary to the pre-enforcement review process set up to handle such challenges to the new worker-safety regulations, and was dismissed. *Id.* at 202–206, 218.

By contrast here, FINRA is seeking civil penalties against Mr. Blankenship that "are designed to punish and deter, not to compensate," which necessarily involves "a type of remedy at common law that could only be enforced in courts of law." *Jarkesy*, 144 S. Ct. at 2130. The Court's Memorandum (ECF No. 26) did not consider the *appropriateness* of Congress' divestment of jurisdiction from Article III courts to an in-house tribunal: whether "Congress **properly** assign[ed Mr. Blankenship's] matter to adjudication in a non-Article III tribunal." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,* 584 U.S. 325, 345 (2018) (emphasis added) (citing *Granfinanciera, S. A.* v. *Nordberg*, 492 U.S. 33, 53–54 (1989)); *accord Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 450–455 (1977).

The *Jarkesy* Court made clear that it is unconstitutional for Congress to assign matters to a non-Article III tribunal where the prosecuting entity seeks "money damages [which] are the prototypical common law remedy." 144 S. Ct. at 2129 (citing *Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993)). Deprived of the structural and procedural protections that are inherent in a public trial before an independent judge and jury, "[t]hings look very different in agency proceedings." *Id.* at 2141 (Gorsuch, J., concurring). For various reasons including "no general right of discovery," the subpoena power that is a discretionary call of the ALJ, a compressed timeline "even in the most complex matters," non-enforcement of the hearsay rule with testimony "taken outside the presence of the defendant or his counsel" and submitted in writing, *id.*, the *Jarkesy* Court concluded that "the Securities and Exchange Commission's use of in-house hearings to seek civil penalties violates the Seventh Amendment right to a jury trial." *Id.* at 2139; *cf. Del. State Sportsmen's Assn. Inc., v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 196, 200 (3d Cir. Jul. 15, 2024) ("Affidavits drafted by lawyers are poor substitutes for discovery, live testimony, and cross-examination.").

The same is true for FINRA's in-house proceedings, used in pursuit of the same goal "to combat securities fraud and increase market transparency." *Jarkesy*, 144 S. Ct. at 2125 (majority op.). Whether or not an agency enforcement mechanism is authorized by an act of Congress, if the means and ends were pursued in court at common law, the means and ends must proceed in court under the Seventh

Amendment.  *Cf. Jarkesy*, 144 S. Ct. at 2128 ("When the English began evading American juries by siphoning adjudications to juryless admiralty, vice admiralty, and chancery courts, Americans condemned Parliament for 'subvert[ing] the rights and liberties of the colonists.' . . . . And when the English continued to try Americans without juries, the Founders cited the practice as a justification for severing our ties to England.") (citations omitted).

Thus, it is respectfully asserted for purposes of this motion seeking temporary injunctive relief pending merits review in the appeal, that the Court's dismissal for lack of subject matter jurisdiction, because Mr. Blankenship has *more* legal hurdles to in-court review than the complainant in *Jarkesy* had, was unsound.  Although it is true that "[s]pecial statutory review schemes divest district courts of their jurisdiction over certain challenges to agency action," Memorandum (ECF No. 26), p. 3, the Supreme Court has unequivocally determined that "[t]he Constitution prevents Congress from withdrawing from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law."  *Jarkesy*, 144 S. Ct. at 2131 (quoting *Murray's Lessee v. Hoboken Land Improv. Co.*, 59 U.S. (18 How.) 272, 284 (1855)).  Thus, *Jarkesy* very pointedly decries that the "special statutory review scheme" of the type at issue here authorizes the "use of in-house hearings to seek civil penalties violates the Seventh Amendment right to a jury trial." *Jarkesy*, 144 S. Ct. at 2139–2140 (Gorsuch, J., concurring).  Because at common law, "only courts of law issued monetary penalties to 'punish culpable individuals,'" the

Supreme Court has repeatedly—and now recently—"recognized that 'civil penalties are a type of remedy at common law that could only be enforced in courts of law.'" *Jarkesy*, 144 S. Ct. at 2129 (majority op.) (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)).

By contrast, in *Thunder Basin*, a pre-enforcement challenge by a mine operator to new employer safety regulations was *properly* directed to a first-instance decision by the agency; whereas the Supreme Court more recently ruled in *Jarkesy* that, as a matter of law, Congress' authorization of the use of in-house hearings to seek enforcement via civil penalties was ruled *improper* because it violates the Seventh Amendment right to a jury trial. *Thunder Basin* is therefore inapposite here. *See also Jarkesy*, 144 S. Ct. at 2136–2137 ("Because the public rights exception as construed in *Atlas Roofing*[, 430 U.S. 442,] does not extend to these civil penalty suits for fraud, that case does not control.").

Congress' act divesting district courts of jurisdiction over FINRA's use of in-house hearings to seek monetary sanctions was ***improper***, just as the Supreme Court ruled in *Jarkesy* regarding the same practice by the SEC. 144 S. Ct. at 2124. Mr. Blankenship respectfully submits in this motion that the Court's dismissal of this action relied upon the flawed assumption that Congress' authorization of non-Article III adjudication by FINRA under 15 U.S.C. § 78*o*-3(b) was ***proper***. Under *Jarkesy*'s rejection of the parallel enforcement scheme by the SEC under 15 U.S.C. § 78u-2, FINRA's enforcement scheme under § 78*o*-3(b) will similarly fall.

The *Jarkesy* Court conducted a robust analysis and pointed to abundant support for the bases on which various sections of the SEA purporting to govern enforcement were ruled unconstitutional. By following *Jarkesy*'s clearly defined path, Mr. Blankenship is likely to prevail on appeal in arguing that, just as Congress' authorization of the SEC's use of in-house hearings to seek civil penalties in 15 U.S.C. § 78u-2[3] violates the Seventh Amendment right to a jury trial, so does Congress' authorization of FINRA's use of in-house hearings to seek monetary sanctions in 15 U.S.C. § 78*o*-3. These laws providing for in-house hearings and monetary penalties and enforcement, although Acts of Congress, are, in a word, "repugnant to the Constitution." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 180 (1803).

The same temporary injunctive relief sought here by Mr. Blankenship against FINRA was granted just last year by the D.C. Circuit in *Alpine Securities v. FINRA*. Citing *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), Judge Walker stated in a lengthy concurrence that "the resolution of claims by an unconstitutionally structured adjudicator is a 'here-and-now injury' that cannot later be remedied." *Alpine Securities*, 2023 WL 4703307, at *2 (citing *Axon*, 598 U.S. at 191). He made

---

[3] 15 U.S.C. § 78u-2(a)(1) ("Civil Remedies in Administrative Proceedings—In any proceeding . . . against any person, the [SEC] . . . *may impose a civil penalty* if it finds . . . that such penalty is in the public interest and that *such person has willfully violated* any provision of the Securities Act of 1933, the Investment Company Act of 1940, the Investment Advisers Act of 1940, or *this chapter, or the rules and regulations thereunder* . . . ."). (citations omitted) (emphasis added).

this observation prior to the *Jarkesy* decision. The timing is important because Alpine Securities' claims against FINRA were attacks upon the regulator's legitimacy. Among Alpine's claims against FINRA was that those subject to FINRA's disciplinary proceedings "are not afforded the right to a trial by jury . . . in violation of the Seventh Amendment." *Scottsdale Capital Advisors Corp. v. FINRA*, 678 F. Supp. 3d 88, 96 (D.D.C. 2023), *judgment stayed* sub nom. *Alpine Securities v. FINRA*, 2023 WL 4703307. In a post-*Jarkesy* world, there is no need to join Judge Walker's prediction that Mr. Blankenship's Seventh Amendment challenge of FINRA's use of in-house hearings to seek monetary sanctions need to be resolved by an Article III court.

The *Jarkesy* Court cut to the chase when it deemed the use of in-house hearings to seek civil penalties unconstitutional. Given the extensive analysis, it stands to reason that perhaps the *Jarkesy* Court considered that the SEA requires, as a condition to allow the registration of a national securities association such as FINRA, that its rules "are designed to prevent fraudulent . . . acts and practices[.]" As well, "[t]he [FINRA Rules must] . . . provide that [ ] persons associated with its members [such as Mr. Blankenship] shall be appropriately disciplined for a violation of [FINRA Rules] by . . . fine, censure, . . . or other fitting sanction." 15 U.S.C. § 78*o*-3(b)(6)-(7).

Put differently, a threshold statutory requirement of FINRA becoming a national securities association was that FINRA had to demonstrate to the SEC, that

FINRA Rules were designed to prevent fraud, and that if FINRA determined that a broker violated its rules, the broker would be fined or sanctioned by FINRA. FINRA's in-house disciplinary functions therefore have absolutely no meaningful distinction from those deemed unconstitutional by the Supreme Court in *Jarkesy*.

For all these reasons, and those to be developed further in merits briefing in the appeal, Mr. Blankenship has made a strong showing of likelihood of success on the merits. And if Mr. Blankenship is likely to succeed on the merits, "the other boxes are easily checked." *Alpine Securities*, 2023 WL 4703307, at *2.

### B. Mr. Blankenship will be irreparably harmed absent an injunction.

The irreparable harm is clear: FINRA's disciplinary proceedings will deprive Mr. Blankenship of his Seventh Amendment right to a jury trial. Akin to *Alpine Securities*, Mr. Blankenship will "suffer irreparable harm without an injunction because the ongoing FINRA enforcement proceedings [will] put [him] out of business." *Alpine Securities*, 2023 WL 4703307, at *2. Mr. Blankenship already requested that FINRA temporarily stay the proceedings pending outcome of the appeal, but that was rejected. FINRA Order Denying Respondent's Motion for Stay of Hearing (Oct. 23, 2024), Exhibit A hereto.[4]

---

[4] Mr. Blankenship also sought relief in the Third Circuit because, at the time the motion was being drafted, the disciplinary proceedings were set to begin October 31, 2024. They have since been pushed to February of 2025, but there is almost no chance the Third rules on the merits by then. Thus, a temporary injunction is necessary to avoid harm to Mr. Blankenship.

In addition to allowing FINRA to inflict a here-and-now injury, *Axon Enter.*, 598 U.S. at 191, by violating Mr. Blankenship's right to a jury trial, absent enjoining FINRA from proceeding, "the court's ability to see the case through" will be destroyed. *Del. State Sportsmen*, 108 F.4th at 205–206. The instant matter is unlike the facts and procedural posture in *Delaware State Sportsmen*, where the plaintiffs sought to enjoin enforcement of law restricting the ownership and sale of certain guns and related equipment. 108 F.4th at 197. The plaintiffs were granted a hearing, but "put on no live witnesses, nor did they offer any evidence that Delaware had tried to enforce these laws or take away their magazines," or explain "how they would be harmed" apart from asserting a desire "to buy or sell assault weapons and large magazines." *Id.* at 198. On interlocutory appeal from the denial of preliminary injunctive relief in the district court, the Third Circuit refused to grant a temporary injunction, recognizing that "[t]he 'purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.'" *Id.* at 200 (citations omitted). Since there was an opportunity for a hearing at which the plaintiffs introduced no evidence, the Third Circuit declined to review and reverse the district court's rejection of a preliminary injunction: "[A]t the end of the case, the court can still grant an adequate remedy." *Id.*

By contrast here, Mr. Blankenship is raising a challenge to the *procedure* of enforcement proceedings in a non-Article III tribunal. There exists no remedy at law or in equity adequate to restore the injuries that Mr. Blankenship will suffer in

the absence of this (or any) Court enjoining FINRA's impending enforcement and imposition of crushing civil penalties. *Jarkesy*, 144 S. Ct. at 2139 ("A defendant facing a fraud suit has the right to be tried by a jury of his peers before a neutral adjudicator. Rather than recognize that right, the dissent would permit Congress to concentrate the roles of prosecutor, judge, and jury in the hands of the Executive Branch. That is the very opposite of the separation of powers that the Constitution demands."); *Alpine Securities*, 2023 WL 4703307, at *2 ("[T]he resolution of claims by an unconstitutionally structured adjudicator is a 'here-and-now' injury *that cannot later be remedied*.") (emphasis added) (citing *Axon Enter.*, 598 U.S. at 191).

Situations where "the threat of irreparable harm does not automatically trigger a preliminary injunction" can be distinguished: sometimes harm threatens to moot a case, as when one party's conduct could destroy the property under dispute, kill the other party, or drive it into bankruptcy, 'for otherwise a favorable final judgment might well be useless.'" *Del. State Sportsmen*, 108 F.4th at 201 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975)). Contrary to the ultimate vindication of a possessory right as in *Delaware State Sportsmen*, the right claimed by Mr. Blankenship here is structural and procedural: the constitutionally required means to achieve the ends. *Axon Enter.*, 598 U.S. at 191–192 ("A proceeding that has already happened cannot be undone. Judicial review of Axon's (and Cochran's) structural constitutional claims would come too late to be meaningful."); *Reilly v. City of Harrisburg*, 858 F.3d 173, 178 (3d Cir. 2017) (observing that irreparable harm is

such that "compensation in money alone cannot atone").

And for similar reasons, this request for temporary injunctive relief is not an appeal to the Court's equitable "power to absolve violations of law" in a manner "unbounded by law." *Del. State Sportsmen*, 108 F.4th at 198–199. On the contrary, Mr. Blankenship seeks the protections of the law, and nothing more. *Jarkesy*, 144 S. Ct. at 2139 ("[E]ffects like increasing efficiency and reducing public costs are not enough to trigger the exception" to the requirement of a public trial in an Article III court, lest the analysis "become nothing more than a game, where the Government need only identify some slight advantage to the public from agency adjudication to strip its target of the protections of the Seventh Amendment.").

Although not only will Mr. Blankenship suffer irreparable harm in the absence of the herein-requested injunctive relief, several dozen, if not hundreds of other similarly situated brokers against whom FINRA seeks monetary sanctions using in-house hearings, will have their Seventh Amendment rights to a jury trial trampled.[5]

### C. A temporary injunction will not substantially injure FINRA, and the public interest weighs in favor of relief.

The equities wholly favor Mr. Blankenship, and a stay will not harm FINRA

---

[5] FINRA boasts of barring over 175 individuals, and suspending another 257 more, in 2023. *See* https://www.finra.org/media-center/statistics (last visited Nov. 22, 2024).

at all. The loss of an enumerated constitutional right far outweighs any purported urgency in reaching a point of finality or avoiding some modest delay attendant to normal appellate review here.  That is especially true as, first, FINRA has not sought to initiate enforcement proceedings in earnest until now; and second, the most recent alleged misconduct is said to have occurred in September 2019.  FINRA Notice of Complaint (ECF No. 20-3), p. 6 of 32.  The total alleged pecuniary harm incurred by approximately 47 investors, over a 3-year period, was less than forty-four thousand dollars.  *Id.*  Moreover, FINRA staff engaged in 4 years' worth of unrelenting solicitation of customers, ***all to no avail***: no single customer that was allegedly harmed made a formal complaint regarding Mr. Blankenship.

Certainly, given that Mr. Blankenship is working to bring this disciplinary enforcement proceeding *into court* and not out of it, the Court can be assured that he is in no way ignorant of the jurisprudential encouragement not to engage in sanctionable behavior. This Court can order relief to preserve the status quo with minimal, if any, disruption because the in-house disciplinary hearings on the merits have not yet begun.

## CONCLUSION

The Court should grant the relief requested herein, and temporarily enjoin FINRA from initiating or continuing its in-house hearings to seek civil penalties pending resolution of the merits of Mr. Blankenship's appeal.  Mr. Blankenship

recognizes that the remedy sought hereby is extraordinary. However, it is FINRA's bullish assertion of its intent to proceed against him, prior to the usual course of appellate review of the Court's case-dispositive ruling, that prompts this motion. "When a matter 'from its nature, is the subject of a suit at the common law,' Congress may not 'withdraw [it] from judicial cognizance.'" *Jarkesy*, 144 S. Ct. at 2139 (quoting *Murray's Lessee*, 59 U.S. (18 How.) at 284). In particular as regards FINRA's disciplinary mechanism, this case is but one example of a current inter-branch dispute in which everyday Americans' constitutional rights are unfairly trammeled until such time as a proper balance can be re-achieved. *Alpine Securities*, 2023 WL 4703307, at *1 (per curiam) ("Upon consideration of the emergency motion for injunction pending appeal . . . it is ORDERED . . . . that the emergency motion for injunction pending appeal be granted and the Financial Industry Regulatory Authority be enjoined from continuing the expedited enforcement proceeding against Alpine Securities Corporation pending further order of the court. Appellant has satisfied the stringent requirements for an injunction pending appeal.") (citations omitted); *cf.* Maxwell Shafer & Christina Zaroulis Milnor, *After* Jarksey*, What's Next For In-House Enforcement Proceedings?* (Sept. 18, 2024) ("Since its congressional inception, the SEC has effectively outsourced enforcement of slivers of its mandate to self-regulatory organizations or "SROs." SROs, like FINRA, . . . take on much of the regulatory load regarding various players in the financial industry. This load often extends to exercising enforcement power over

members of the organizations. . . . There are escalating complaints that, despite their ostensibly private status, SROs exercise government authority. The distinction is particularly hard to see when it comes to their ability to investigate, charge, and adjudicate violations."), *available at* https://www.cshlaw.com/resources/after-jarke sy-what-is-next-for-in-house-enforcement-proceedings/ (last visited Nov. 22, 2024).

Respectfully submitted,

By:   /s/ John P. Quinn
    John P. Quinn, Esq. (Pa. Bar No. 85239)
    **Quinn Law Partners, LLC**
    Radnor Financial Center
    150 N. Radnor Chester Road, Suite F200
    Radnor, PA 19087
    Telephone: (484) 354-8080
    Email: *jpquinn@quinnlp.com*

    Dochtor D. Kennedy, MBA, J.D.
    (Co. Bar No. 45851)
    **HLBS Law**
    390 Interlocken Crescent, Suite 350
    Broomfield, CO 80021
    Telephone: (720) 282-5154
    Facsimile: (720) 340-5022
    Email: *doc.kennedy@hlbslaw.com*

    *Attorneys for Defendant D. Allen Blankenship*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion For Temporary Injunction Pending Appeal And For Temporary Administrative Relief of Defendant was electronically filed with the Court this date and is available for viewing and downloading from the ECF System.  All counsel of record were served via electronic notification.

By:   /s/ John P. Quinn
John P. Quinn, Esq. (Pa. Bar No. 85239)
**Quinn Law Partners, LLC**
Radnor Financial Center
150 N. Radnor Chester Road, Suite F200
Radnor, PA 19087
Telephone: (484) 354-8080
Email: *jpquinn@quinnlp.com*

Dochtor D. Kennedy, MBA, J.D.
(Co. Bar No. 45851)
**HLBS Law**
390 Interlocken Crescent, Suite 350
Broomfield, CO 80021
Telephone: (720) 282-5154
Facsimile: (720) 340-5022
Email: *doc.kennedy@hlbslaw.com*

*Attorneys for Defendant D. Allen Blankenship*

Date:  November 22, 2024

# Exhibit A

**FINANCIAL INDUSTRY REGULATORY AUTHORITY**
**OFFICE OF HEARING OFFICERS**

DEPARTMENT OF ENFORCEMENT,

                Complainant,

      v.

D. ALLEN BLANKENSHIP
(CRD No. 2842335),

                Respondent.

Disciplinary Proceeding
No. 2019064333401

Hearing Officer–LOM

**ORDER DENYING RESPONDENT'S MOTION FOR STAY OF HEARING**

On October 21, 2024, I held a pre-hearing conference ("PHC") in this FINRA disciplinary proceeding. At the PHC, I heard oral argument on Respondent's motion to stay the upcoming hearing in this proceeding until the United States Court of Appeals for the Third Circuit rules on Respondent's appeal of the decision by the Eastern District of Pennsylvania in *Blankenship v. Financial Industry Regulatory Authority* (Civil action no. 2:24-cv-03003-JFM). Prior to the PHC, Respondent filed a brief in support of his requested stay and Enforcement filed a brief in opposition.

I issued an oral ruling at the PHC denying Respondent's motion and said that I would follow up with a brief order memorializing that ruling. Being fully advised in the matter, and for the reasons discussed at the PHC, I **DENY** Respondent's Motion for Stay of Hearing.

        **SO ORDERED**.

        Lucinda O. McConathy
        Hearing Officer

Dated: October 23, 2024

Copies to:
      Dochtor D. Kennedy, Esq. (via email)
      Alex Padla, Esq. (via email)
      Justin W. Arnold, Esq. (via email)
      John R. Baraniak, Jr., Esq. (via email)
      Tina Lawrence, Esq. (via email)
      Jennifer L. Crawford, Esq. (via email)